#300021736

# UNITED STATES DISTRICT COURT

| | |
|---|---|
| **FOR THE NORTHERN DISTRICT OF TEXAS** | **Case No.** _____ |
| | **3 - 2 6 C V - 0 4 3 - 0** |
| **KEVIN M. YORK** | **FEDERAL COMPLAINT & JURY DEMAND** |
| Plaintiff | |
| v. | (ADA Title II; ADA Retaliation, 42 U.S.C. § 12203; Rehabilitation Act § 504; 42 U.S.C. § 1983; Civil RICO, 18 U.S.C. § 1962(c) & (d); Due Process; Equal Protection; Fraud; Conspiracy; Abuse of Process; and Related Claims) |

**NYEMASTER GOODE, P.C.;**
**WOODS FULLER SHULTZ & SMITH, P.C.;**
**AMERICAN STATE BANK;**
**AMBANK COMPANY, INC.;**
**SCOTT POSTMA;**
**W. DALE DEN HERDER;**
**ROB BIXENMAN;**
**AMY VAN ES;**
**JOEL WESTRA;**
**BRANDON WOUDSTRA;**
**KRISTI HOOGENDOORN;**
**MICHAEL THRALL;**
**MATTHEW MCGUIRE;**
**DAVID BOWER;**
**ETHAN OLSON;**
**HEATH OBERLOH;**
**WILLIAM BECK;**
**DAN HARMLINK;**
**COREY R. LORENZEN** (individually and in official capacity);
**IOWA JUDICIAL BRANCH;**
**JUDGE SARAH CRANE** (prospective relief and individual capacity for non-adjudicative acts);
**JUDGE ROBERT TIEFENTHALER** (prospective relief and individual capacity for non-adjudicative acts);
**JUDGE PATRICK TOTT** (in his official capacity for prospective relief only);
**ADA COORDINATOR PEGGY FRERICKS** (in her official capacity as ADA Coordinator); **AND JOHN DOES 1–50, et al.**

Defendants



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JAN - 8 2025

CLERK, U.S. DISTRICT COURT
By_____
Deputy

## I. INTRODUCTION

1. This action arises from a sustained, multi-year pattern of disability discrimination, retaliation, fraud, and coordinated litigation abuse carried out under color of state law by Iowa judicial actors, a court-appointed receiver, private attorneys acting jointly with state officials, and financial institutions.

2. Plaintiff Kevin M. York ("York") is a pro se litigant with documented dyslexia, ADHD, and processing-speed impairments. Beginning in late 2024, York requested reasonable accommodations under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act to permit meaningful participation in complex, high-volume commercial litigation. Those requests were delayed, denied, restricted, or weaponized.

3. Instead of providing reasonable accommodations, Defendants imposed heightened procedural burdens, punished York for disability-related limitations, and used his accommodation requests as a pretext to strike filings, deny counterclaims, impose sanctions, restrict participation, and strip rights—violating the ADA, the Rehabilitation Act, and the Fourteenth Amendment.

4. Acting in coordination across multiple state-court proceedings, Defendants engaged in a deliberate pattern of misconduct including, without limitation:

   o blocking and rejecting filings;
   o striking pleadings wholesale;
   o denying leave to assert counterclaims;
   o obstructing discovery while demanding impossible production;
   o fabricating or exaggerating grounds for sanctions;
   o appointing and empowering a biased receiver;
   o manufacturing narratives of noncompliance;
   o concealing and misattributing critical evidence;
   o weaponizing default judgments and receivership leverage;
   o colluding with banks and opposing counsel;
   o misrepresenting the record;
   o sabotaging Plaintiff's business operations; and
   o retaliating against Plaintiff for invoking federally protected disability rights.

5. The misconduct constitutes fraud upon the court, civil conspiracy, and enterprise activity satisfying civil RICO, including predicate conduct involving mail and wire communications, obstruction-related conduct, extortionate litigation leverage, and intentional financial interference.

6. As a direct and proximate result, York was deprived of due process, equal protection, protected property and corporate interests, meaningful court access, ADA-mandated accommodations, and the ability to present claims and defenses on the merits.

7. Plaintiff seeks compensatory damages in the nine-figure range, including loss of enterprise value and consequential damages, together with emotional distress damages, punitive damages where permitted, mandatory treble damages under RICO, declaratory and injunctive relief, costs, attorneys' fees, and all other relief this Court deems just and proper. The claims asserted herein present potential exposure far exceeding primary coverage limits and are reasonably expected to trigger excess, umbrella, and reinsurance obligations.

8. York also seeks prospective injunctive relief requiring ADA-compliant access to judicial services, prohibiting disability retaliation by state actors and agents, and remedying orders and processes contaminated by fraud and discrimination. Upon information and belief, Defendants maintain or maintained primary, excess, umbrella, and/or professional liability insurance policies potentially applicable to the claims asserted herein. Plaintiff expressly pleads damages in an amount sufficient to require notice to all such carriers.

Plaintiff's disabilities have been formally recognized by multiple governmental entities, including an ADA accommodation approval issued by the State of Texas, underscoring that Defendants' denial of accommodations was not based on medical uncertainty but on impermissible subjective judgment and retaliation.

## II. JURISDICTION, PERSONAL JURISDICTION, AND VENUE

9. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including:

    o   ADA Title II, 42 U.S.C. §§ 12131–12134;
    o   ADA retaliation, 42 U.S.C. § 12203;
    o   Rehabilitation Act § 504, 29 U.S.C. § 794;
    o   42 U.S.C. § 1983 (deprivations under color of state law);
    o   the Due Process and Equal Protection Clauses of the Fourteenth Amendment; and
    o   Civil RICO, 18 U.S.C. §§ 1961–1968.

10. This Court has jurisdiction over civil RICO claims under 18 U.S.C. § 1964(c).

11. The Court has supplemental jurisdiction over related state-law claims under 28 U.S.C. § 1367(a).

12. This Court has personal jurisdiction because Defendants purposefully directed communications and conduct at York while he was domiciled in Texas, and the brunt of the resulting injury was suffered in Texas.

13. Defendants repeatedly directed conduct into Texas through email, telephone, electronic filings, banking communications, receivership directives, and litigation correspondence, with knowledge that York was in Texas and would suffer harm there.

14. Personal jurisdiction is proper under the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984), and comports with due process.

15. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events and injuries occurred in this District while York was domiciled in Texas.

16. Venue is also proper under 18 U.S.C. § 1965(a) because York was injured in this District by acts constituting racketeering activity affecting interstate commerce.

17. To the extent Defendants seek transfer under 28 U.S.C. §§ 1404(a) or 1406, transfer should be denied because: (a) Texas is where injury was suffered; (b) Iowa is the locus of the alleged discrimination and constitutional violations; and (c) forcing York to litigate civil-rights claims in the same system he challenges would undermine fairness and justice.

18. Plaintiff exhausted all available administrative remedies or was excused from exhaustion due to futility and ongoing retaliation.

19. This action does not seek appellate review of any state court judgment, nor does it seek to enjoin ongoing state proceedings. Plaintiff challenges independent federal violations—disability discrimination, retaliation, and racketeering—occurring outside and in parallel with state court proceedings.

## III. PARTIES

### A. Plaintiff

20. Plaintiff Kevin M. York is a natural person domiciled in Texas who conducts business activity in multiple states including Iowa.

21. York is a qualified individual with disabilities, including dyslexia, ADHD, and associated processing-speed impairments that substantially limit major life activities including reading, written communication, concentration, and real-time information processing.

22. York's accommodation needs include structured written communication, clear instructions, and adequate processing time for complex legal tasks. These are reasonable accommodations protected by the ADA and the Rehabilitation Act.

23. After counsel withdrew in the underlying Iowa litigation, York proceeded pro se and repeatedly requested accommodations necessary to participate meaningfully. Those requests were denied, restricted, delayed, or weaponized.

## B. State-Actor Defendants and Public Entities

24. Defendant Iowa Judicial Branch is a "public entity" under ADA Title II responsible for providing equal access to judicial services, programs, and activities, including reasonable accommodations.

25. Defendant Peggy Frericks served as the Iowa Judicial Branch ADA Coordinator and, with notice of York's disabilities and documentation, denied, restricted, delayed, or failed to implement accommodations.

26. Defendant Judge Sarah Crane presided over *Postma v. York, et al.*, Iowa Business Specialty Court Case No. LACV030754.

27. Judge Crane is sued (a) in her individual capacity for administrative, non-adjudicative, and extra-judicial conduct, including handling and denial of ADA accommodation requests, access-to-court practices, and policy-level actions not protected by absolute judicial immunity; and (b) in her official capacity for ongoing violations of federal law for which York seeks prospective declaratory and injunctive relief under *Ex parte Young*.

28. Defendant Corey R. Lorenzen was appointed receiver in LACV030754 and acted under color of state law while exercising court-delegated authority over York's business operations and access to corporate functions.

29. Defendant Judge Robert Tiefenthaler is sued in his official capacity only to the extent necessary for prospective relief tied to system-level practices and policies. Denied York ADA accommodations in Iowa Court Case No. CVCV030754.

30. Defendant Judge Patrick Tott is sued in his official capacity only to the extent necessary for prospective relief tied to system-level practices and policies. Ruled on Case without York having ADA accomadations in Iowa Court Case No. CVCV027258 .

## C. Private-Actor Defendants and Enterprise Participants

31. Defendant Scott Postma was a primary instigator of the attempted corporate takeover scheme and related litigation campaign, including coordination with banks and counsel to exert coercive leverage over York and the Ozone-related entities.

32. Defendant Nyemaster Goode, P.C. is an Iowa law firm whose attorneys acted individually and jointly, and in concert with state actors, to harm York through coercive litigation tactics, procedural weaponization, and disability-related retaliation.

33. Nyemaster participants include, without limitation: Michael Thrall, Matthew McGuire, David Bower, Ethan Olson, and John Doe Attorneys 1–20.

34. Defendant Woods Fuller Shultz & Smith, P.C. is an Iowa law firm that participated in earlier stages of Postma-related litigation and corporate-document positioning later leveraged against York.

35. Woods Fuller participants include, without limitation: William Beck, Heath Oberloh, Dan Harmlink, and John Doe Attorneys 21–35.

36. Defendant Heath Oberloh drafted certain corporate documentation in good faith in earlier representation. After later affiliation with Woods Fuller, he failed to correct or prevent later misuse or mischaracterization of those documents. This claim is pleaded as negligence/failure-to-correct, not intentional misconduct.

37. Defendants American State Bank and AMBANK Company, Inc., including executives and agents, participated by withholding material records, manipulating loan enforcement, and coordinating financial leverage to destabilize York and seize control over the Ozone-related entities.

38. Bank participants include, without limitation: W. Dale Den Herder, Rob Bixenman, Amy Van Es, Joel Westra, Brandon Woudstra, Kristi Hoogendoorn, Erik Skott, and John Doe officers 36–45.

## D. Misattribution Entity Included for Discrimination and Mischaracterization

39. Ozone Solutions, Inc. is an Iowa corporation that Defendants repeatedly mischaracterized as being owned or controlled by York despite York not being an equity owner/shareholder at relevant times.

40. Defendants used this misattribution in pleadings, receivership actions, and judicial findings to impose liability, justify sanctions, and deny accommodations by falsely portraying York as a "sophisticated owner" controlling the entity at issue.

## E. John Doe Defendants

41. John Doe Defendants 1–50 include court employees, ADA administrators, bank officers, attorneys, advisors, and agents whose identities are not yet fully known.

42. York will amend to substitute named defendants after discovery.

# IV. FACTUAL BACKGROUND

## A. York's Disabilities and Accommodation Needs

43. At all relevant times, Defendants Nyemaster Goode, P.C., through its attorneys, and Defendant American State Bank, through its officers and agents, acted under color of state law within the meaning of 42 U.S.C. § 1983 by willfully participating in joint action with state officials and court-appointed actors, including judicial officers, the ADA Coordinator, and the Receiver. Their conduct was a moving force behind the constitutional and statutory violations alleged herein, rendering them liable under § 1983.

44. Defendant Nyemaster Goode, P.C., through its attorneys, and Defendant American State Bank, through its officers and agents, acted pursuant to established practices, customs, and institutional strategies of invoking judicial enforcement mechanisms to obtain outcomes they could not lawfully achieve through private action alone.

45. These practices included, but were not limited to:
    - repeatedly requesting sanctions and procedural exclusion rather than merits adjudication;
    - supplying misleading or incomplete narratives regarding Plaintiff's compliance and cooperation;
    - withholding material information while accusing Plaintiff of noncompliance;
    - encouraging or exploiting unequal enforcement of procedural rules; and
    - leveraging court authority and receivership powers as coercive tools.

46. These actions were not isolated or accidental, but reflected a pattern and practice of coordinated conduct undertaken with knowledge that judicial officers and court-appointed actors would adopt, ratify, or enforce the requested measures.

47. Defendant Nyemaster Goode, P.C., and Defendant American State Bank did not act as passive litigants or neutral record custodians. Through their attorneys, officers, and agents, they repeatedly employed an institutional litigation strategy of seeking coercive judicial enforcement—sanctions, procedural exclusion, receivership leverage, and operational shutdown pressure—based on misleading factual narratives and selective omissions, with knowledge those narratives would be adopted and enforced by judicial officers and the court-appointed Receiver. This was not an isolated error or single filing dispute; it reflects a recurring practice of invoking state enforcement power as a substitute for lawful private remedies, and of using the court's authority as a coercive instrument to obtain business control and distressed-value outcomes.

48. By knowingly supplying and reinforcing false or materially incomplete narratives for the purpose of obtaining sanctions, participation restrictions, and receivership expansion—while leveraging state enforcement mechanisms to accomplish objectives unavailable through private action—Nyemaster Goode and American State Bank were willful participants in joint action with state officials and court-appointed actors. Their conduct is fairly attributable to the State for purposes of 42 U.S.C. § 1983. See *Dennis v. Sparks*, 449 U.S. 24 (1980).

49. York has clinically diagnosed dyslexia and ADHD affecting reading accuracy and rate, processing speed, executive functioning, working memory, and multi-input cognitive load.

50. York's disabilities were evaluated by a licensed psychologist in July 2025, generating a psychoeducational evaluation documenting functional limitations and confirming accommodation needs.

51. York's reasonable accommodations include structured written communication, clarity of instructions, realistic deadlines for complex tasks, and adequate processing time, consistent with the requirement that communications be "as effective as communications with others." See 28 C.F.R. § 35.160.

52. York submitted accommodation requests through Iowa's judicial ADA process. Defendants treated disability needs as a basis for punishment and denial rather than accommodation.

## A.1 Notice of disability

53. Beginning no later than **April 2025**, York informed the Iowa court system that he has **diagnosed dyslexia and ADHD** with processing-speed limitations impacting reading accuracy/rate, written expression, executive functioning, and real-time comprehension in high-volume litigation.

54. York's notice and requests were consistent with accommodations previously recognized and approved by other governmental entities, including the State of Texas, and therefore provided Defendants objective confirmation of his disability status and accommodation needs.

55. At the time of York's August 4–5, 2025 accommodation request, Defendants—including judicial officers and court-appointed actors—were already aware that York was proceeding **pro se**, facing escalating procedural enforcement, sanctions exposure, and imminent deprivation of property and business interests.

56. Despite this notice, Defendants **failed to timely implement reasonable accommodations**, failed to engage in an interactive process, and instead continued to subject York to rigid procedural enforcement and punitive measures incompatible with his documented disabilities.

57. York provided documentation supporting these limitations, including **ADA request form to Iowa ADA Coordinator Peggy Frericks August 2025, Request for accommodations August, September, and October 2025 to the Judges, psychoeducational evaluation done August, 2025, Texas ADA approval in September 2025**, and requested accommodations to permit meaningful participation in proceedings and filings.

58. Plaintiff Kevin M. York is a qualified individual with disabilities, including dyslexia and ADHD, which substantially limit major life activities including reading accuracy and rate, written expression, concentration, executive functioning, and processing speed—particularly in high-volume, time-compressed legal proceedings.

59. On **August 4, 2025**, York **personally communicated by telephone** with **Peggy Frericks**, the ADA Coordinator for the Iowa Judicial Branch, and provided **direct notice** of his disabilities, functional limitations, and need for reasonable accommodations in connection with ongoing Iowa court proceedings.

60. During that conversation, York explained that without accommodations—such as structured written instructions, adequate processing time, and clear identification of compliance requirements—he would be unable to meaningfully and equally participate in complex litigation.

61. On **August 5, 2025**, York **formally submitted a written ADA accommodation request** to the Iowa Judicial Branch, consistent with court-prescribed ADA procedures, requesting reasonable accommodations necessary to ensure effective communication and equal access to judicial services.

62. York's accommodation request was supported by documented disability history and was consistent with accommodations previously recognized and approved by other governmental entities, including the **State of Texas**, for the same disabilities and functional limitations.

63. At the time of York's August 4–5, 2025 accommodation request, Defendants—including judicial officers and court-appointed actors—were already aware that York was proceeding **pro se**, facing escalating procedural enforcement, sanctions exposure, and imminent deprivation of property and business interests.

64. Despite this notice, Defendants **failed to timely implement reasonable accommodations**, failed to engage in an interactive process, and instead continued to subject York to rigid procedural enforcement and punitive measures incompatible with his documented disabilities.

## A.2 Denial of Accommodations and Knowledge-Based Retaliation

65. On **September 10, 2025**, Defendant **Peggy Frericks**, acting in her official capacity as ADA Coordinator for the Iowa Judicial Branch, **formally denied Plaintiff Kevin M. York's requested accommodations**, despite prior notice of his documented disabilities and functional limitations.

66. On **September 10, 2025**, Defendant **Peggy Frericks**, acting in her official capacity as ADA Coordinator for the Iowa Judicial Branch, **formally denied Plaintiff Kevin M. York's requested accommodations**, despite prior notice of his documented disabilities and functional limitations. The denial was issued **after** York had provided direct notice of his disabilities (August 4, 2025) and **after** submission of his written

accommodation request (August 5, 2025), thereby establishing actual knowledge of Plaintiff's protected status and needs.

67. The denial did not include a lawful individualized assessment, did not meaningfully engage in the interactive process, and relied on impermissible subjective judgments regarding Plaintiff's perceived "ability" rather than objective functional limitations, in violation of Title II of the ADA and § 504 of the Rehabilitation Act.

68. At the time of the September 10, 2025 denial, Defendants were actively enforcing procedural deadlines, sanctions exposure, discovery obligations, and filing restrictions against Plaintiff in high-stakes commercial litigation, despite knowing that Plaintiff lacked accommodations necessary for equal participation.

69. Following the September 10, 2025 denial, Defendants **continued and escalated** adverse actions against Plaintiff, including striking filings, denying leave to assert counterclaims, imposing monetary sanctions, and restricting Plaintiff's ability to present evidence and defenses.

70. The September 10, 2025 denial therefore functioned as a **but-for causal event**, converting Defendants' conduct from negligent failure to accommodate into **knowing discrimination and retaliation**, and rendering subsequent enforcement actions intentionally punitive and unlawful.

## A3. Continuing Violation and Ongoing Harm

71. Defendants' failure to provide reasonable accommodations after the September 10, 2025 denial constitutes a **continuing violation**, as Plaintiff remained subject to ongoing judicial proceedings, sanctions exposure, and deprivation of property and liberty interests without ADA-compliant access.

72. Each subsequent ruling, sanction, enforcement action, and procedural restriction imposed without accommodations caused renewed and compounding injury to Plaintiff and independently violated federal law.

## A.4 Specific Reasonable Accommodations Requested

73. Plaintiff Kevin M. York requested reasonable, narrowly tailored accommodations designed to ensure effective communication and equal participation in judicial proceedings, including but not limited to:

   a. **Written, step-by-step instructions** for court-required compliance tasks (including discovery responses, exhibit formatting, citation verification, and filing requirements), to mitigate dyslexia-related transposition and processing errors;

   b. **Additional response time** for complex filings, discovery compliance, sanctions responses, and high-volume document production—particularly where deadlines were compressed, retroactive, or imposed during holidays;

   c. **Clear, plain-language identification of compliance requirements**, including but not limited to:
      i. specific Bates-stamp requirements,
      ii. exhibit labeling conventions,
      iii. certification requirements,
      iv. and precise deadlines,
      v. so that Plaintiff could comply without guesswork or oral clarification;

   d. **Permission to utilize assistive and accessibility tools** (including spell-check, formatting aids, read-aloud tools, and AI-assisted comprehension tools), with Plaintiff remaining fully responsible for final content accuracy—consistent with ADA guidance permitting auxiliary aids;

    e.  **Advance notice and avoidance of "ambush" deadlines**, including surprise motions, late-filed materials by opposing counsel, or post-deadline filings that triggered immediate response obligations without adequate processing time; and

    f.  **Written communication in lieu of unscheduled oral demands**, where Plaintiff had documented difficulty processing rapid oral instructions in high-stakes, multi-issue proceedings.

74. These accommodations were reasonable, modest, and commonly provided in judicial and administrative settings; they did not alter substantive legal standards, prejudice opposing parties, or impose undue administrative burden.

75. The requested accommodations were directly aimed at preventing the very procedural errors later cited by Defendants as grounds for sanctions, adverse rulings, and credibility attacks.

## A.4(b) Causation: Denied Accommodations and Predictable Harm

76. Defendants' refusal to implement the requested accommodations directly caused foreseeable and preventable harm, including citation errors, formatting issues, delayed responses, and compliance disputes that were then used as grounds for sanctions, filing strikes, and denial of substantive rights.

77. Defendants were on actual notice that Plaintiff's dyslexia and ADHD created heightened risk of transposition errors, citation inaccuracies, and processing delays without accommodations—yet Defendants imposed monetary sanctions and adverse rulings for those exact outcomes.

78. Rather than modify procedures to ensure equal access, Defendants escalated enforcement, imposed financial penalties, and portrayed disability-linked limitations as "noncompliance," converting a failure-to-accommodate into intentional discrimination and retaliation.

79. The sanctions order dated May 14, 2025, and subsequent July 2, 2025 rulings demonstrate that Defendants punished Plaintiff for disability-related effects after denying the accommodations necessary to prevent them.

    **See Exhibit C**

## A.5 Protected Activity Followed by Escalation of Adverse Actions

80. York's August 4–5, 2025 communications and written submission constituted **protected activity** under the Americans with Disabilities Act and the Rehabilitation Act.

81. Following York's invocation of ADA rights, Defendants escalated adverse actions rather than providing reasonable modifications, including striking filings, denying leave to assert counterclaims, imposing monetary sanctions, and restricting York's participation in proceedings affecting substantial property and liberty interests.

82. The sequence of events reflects a punitive pattern: Defendants denied or restricted accommodations and then penalized York for predictable disability-related limitations in processing, citation verification, and procedural compliance.

## A.6 Iowa ADA process and response

83. York submitted formal accommodation requests through the Iowa Judicial Branch ADA process on or about **August 2025**.

84. The Iowa ADA Coordinator **denied** the requested accommodations on or about **September 10th, 2025**, including **stating to go read the website or hire an attorney.**

85. Despite notice and documentation, York's accommodation needs were **denied** in practice during key decision points, including sanctions proceedings, pleading restrictions, and discovery enforcement.

## A.7 "Effective communication" failure

86. York's requests were designed to ensure communications and process were "as effective as communications with others," but Defendants failed to provide accommodations sufficient to prevent predictable disability-linked errors and procedural breakdowns in a complex business-court case.

## A.8 Protected Activity and Escalation of Adverse Actions

87. York's accommodation requests constituted protected activity under federal disability law. After York invoked disability rights, Defendants escalated adverse actions and procedural penalties rather than implementing reasonable modifications to enable compliance.

88. Adverse actions included, among other things, striking York's filings, denying leave to counterclaims, awarding fee sanctions, restricting York's participation, and adopting narratives of "noncompliance" despite documented disability limitations and requests for reasonable accommodation.

89. The pattern reflects a punitive cycle: Defendants denied or restricted accommodations, then punished York for the predictable consequences of proceeding without accommodations in high-volume litigation.

90. On **May 14, 2025**, the Iowa court struck filings and imposed sanctions including attorney's fees based on alleged incorrect citations to legal authority and required York to personally verify every rule/case quotation before filing.

91. York's need for accommodations—additional time, clear written instructions, and effective communication—was directly relevant to preventing citation and transposition errors attributable to documented dyslexia/ADHD limitations. Rather than accommodating, Defendants imposed monetary punishment and escalating procedural restrictions.

92. On **July 2, 2025**, the Iowa court denied York's motion for leave to amend to add counterclaims, citing lack of good cause and the late stage of the case, thereby foreclosing merits adjudication of York's claims.

## B. Corporate Context and Financial Exposure

93. York served as CEO/operator of multiple ozone-related entities (the "Ozone Entities"), including Ozone LLC; OS Holdings LLC; Ozone Solutions Rental LLC; O3 Tech LLC; Preservation Tech LLC; and related entities. York also served as a primary personal guarantor of certain business debt.

94. The Ozone Entities operate in ozone generation, environmental remediation, rental/service operations, and related manufacturing support.

95. York personally guaranteed substantial debt (approximately $1.3 million) and contributed substantial funds toward stabilization, including payroll, equipment, and facilities. This exposure was known to the bank participants.

96. Postma refused to personally guarantee debt and used shareholder leverage and litigation pressure to destabilize financing and control.

## C. Record Custody and Third-Party Control

97. Historical records were fragmented due to device theft/loss events, bank possession of loan and financial records, former counsel possession of production archives, former accounting custodian possession, and withholding or control by Postma and counsel.

98. Many records demanded during receivership were not within York's possession, custody, or control because they were held by third parties.

## D. Litigation Conduct and Procedural Choke Points

99. Postma, first represented by Woods Fuller and later by Nyemaster Goode, pursued procedural choke points, sanctions pressure, and asymmetric enforcement aimed at a disabled pro se litigant.

100. When York attempted to assert counterclaims and defenses, his efforts were blocked by punitive procedural enforcement rather than adjudication on the merits.

101. When York requested accommodations, Defendants portrayed the requests as improper and used them as a platform for sanctions narratives and restrictions.

## E. Receiver Appointment and York's Cooperation

102. In or about November 2025, Judge Crane appointed Lorenzen as receiver in LACV030754.

103. York promptly sent written communication offering full cooperation, including meetings, facility access, operational updates, and assistance stabilizing utilities and payroll.

104. York's cooperation communications were material and responsive, but omitted or minimized in receiver filings.

## F. Thanksgiving-Week "Impossible Demand"

105. During Thanksgiving week, the receiver demanded wide-ranging records spanning multiple entities and years within approximately 24–48 hours.

106. The scope and deadline were not reasonably achievable, particularly where many documents were held by banks, counsel, prior custodians, or otherwise not within York's control.

107. The receiver knew or should have known the demand was structurally impossible—especially in a holiday week—yet used it as a basis to manufacture noncompliance.

## G. What York Produced

108. York produced what he could access, including uploading production archives and records as received, and identifying categories held by banks, counsel, former financial custodians, or others.

109. York sent written responses documenting what was produced, what was missing, and where records were held.

110. Those communications were omitted or not fairly presented in receiver filings used to support "noncooperation" narratives.

## H. Manufactured Noncompliance and Disability Retaliation

111. Receiver filings characterized York as unresponsive while failing to disclose key cooperation communications and the objective impossibility of the deadline.

112. The receiver obtained certain records directly from third parties and then accused York of withholding records not within York's possession or control.

113. The receiver sought authority to reduce York's role, reduce compensation, or terminate York based on "ADA-related processing limitations," constituting disability retaliation and discrimination by a state-appointed actor.

## I. ADA Denial and Asymmetric Enforcement

114. Accommodation rulings relied on surface-level "competence" observations to deny or restrict accommodations despite documented functional limitations.

115. The court simultaneously sanctioned York for disability-related limitations while denying the accommodations that would reduce the very errors being punished.

116. Rules were enforced asymmetrically: attorney defects and late filings were tolerated while York was punished disproportionately, resulting in cascading procedural harm.

## J. Harm

117. As a direct and proximate result of Defendants' coordinated misconduct, York suffered catastrophic loss of business operations, loss of income, destruction of enterprise and goodwill value, reputational injury, severe emotional distress, exposure to sanctions and contempt proceedings, and economic damages reasonably expected to exceed several hundred million dollars once statutory treble damages, punitive damages, attorneys' fees, and equitable relief are applied.

118. The coordinated conduct deprived York of meaningful court access, due process, and equal protection, and reflects enterprise-style coordinated misconduct.

## K. Receiver's ADA-Retaliatory Demands and Manufactured Noncompliance

119. Beginning on or about November 24, 2025, court-appointed Receiver Corey R. Lorenzen issued sweeping document demands spanning more than thirty-five categories of information across multiple corporate entities and multiple years, including records not within Plaintiff's possession, custody, or control. The demands were issued immediately before the Thanksgiving holiday and imposed 24–48 hour compliance deadlines that were objectively impossible.

120. Plaintiff responded in writing, consistent with his documented ADA accommodations, identifying responsive information within his possession and identifying third-party custodians—including banks, prior counsel, and adverse parties—who maintained the original records. Plaintiff further offered full cooperation and provided unorganized document sets exactly as they had been transmitted to him by those custodians.

121. Despite Plaintiff's written responses, Receiver Lorenzen falsely asserted that Plaintiff had "not responded," demanded telephone communication in direct contravention of Plaintiff's ADA accommodation, and explicitly questioned Plaintiff's competence and business knowledge based on Plaintiff's disability-related need for structured written communication.

122. Receiver Lorenzen threatened to "escalate" the matter to the court and seek adverse action unless Plaintiff abandoned his ADA accommodation and participated in unscheduled oral calls. These threats were made despite Plaintiff's documented cooperation and repeated written responses.

123. The Receiver's conduct reflects deliberate ADA retaliation, intentional mischaracterization of compliance, and a manufactured narrative of noncooperation used to justify punitive court action and expanded receivership authority.

   **See Exhibit D** (Receiver correspondence, Nov. 24–Dec. 3, 2025).

124. Defendants' denial of ADA accommodations was not an isolated access failure, but the enabling condition that allowed procedural exclusion, sanctions, receivership expansion, and asset seizure to occur. Each subsequent deprivation flowed predictably from Defendants' refusal to provide equal access, rendering the resulting sanctions and enforcement actions constitutionally infirm and unlawfully retaliatory.

## L. Scott Postma's Lack of Standing, Unclean Hands, and Evidence Suppression

125. Defendant Scott Postma lacked legal standing to initiate and prosecute the underlying actions against Plaintiff and the Ozone-related entities because, at all relevant times, Postma was not in good standing under the governing shareholder agreements, buy-sell provisions, operating agreements, and applicable law.

126. Postma's claims were further barred by the doctrine of unclean hands, as Postma materially breached fiduciary duties, refused to assume personal guaranty obligations borne by Plaintiff, obstructed corporate governance, and engaged in conduct designed to destabilize the enterprise while simultaneously seeking judicial relief.

127. Postma knowingly withheld, concealed, or misrepresented material evidence bearing directly on ownership structure, financial condition, document custody, shareholder restrictions, and Plaintiff's operational authority, including evidence uniquely within Postma's possession or control.

128. This evidence suppression included, without limitation:

   a) selective production of corporate and financial records;
   b) withholding communications with banking institutions;
   c) concealment of documents contradicting Postma's asserted ownership and control narratives; and
   d) failure to disclose material facts necessary for accurate judicial determination.

129. Postma's lack of standing and unclean hands were repeatedly raised or implicated by Plaintiff but were never adjudicated on the merits due to procedural obstruction, discriminatory access barriers, and retaliatory enforcement mechanisms imposed against Plaintiff.

130. Postma's litigation conduct formed an essential pillar of the enterprise alleged herein, supplying the false factual predicates relied upon by counsel, the Receiver, and judicial actors to justify sanctions, receivership escalation, and deprivation of Plaintiff's rights.

131. Plaintiff has asserted more than thirty claims, defenses, and counterclaims against Postma in related proceedings, including claims for fraud, breach of fiduciary duty, civil conspiracy, tortious interference, spoliation, and racketeering-related misconduct (collectively, the "Postma Claims"), all of which are incorporated by reference for purposes of motive, pattern, intent, and enterprise conduct.

132. Postma's lack of standing, evidence suppression, and unclean hands independently bar equitable relief, derivative claims, receivership leverage, and any judicial enforcement premised on his misrepresentations.

133. The continuation of litigation and receivership authority predicated on Postma's defective standing constitutes ongoing constitutional injury, abuse of process, and fraud upon the court.

134. Postma's conduct was not incidental—it was foundational. Without Postma's misrepresentations, withheld evidence, and procedurally barred claims, the coordinated misconduct alleged herein could not have occurred.

135. The court struck the counterclaim pleading **solely** because leave had not been sought, and later denied leave as untimely under the scheduling order deadline—even though the court had earlier instructed that leave was required.

136. York attempted counterclaims earlier (your December attempt + April 16 attempt) but was repeatedly funneled into procedural traps where the "cure" was demanded yet the timeline made compliance impossible once pleadings "closed."

137. These claims include allegations of standing defects, fiduciary misconduct, evidence suppression, and fraud upon the court by the initiating party, materially impairing defense positions and substantially increasing insured exposure.

138. York's disabilities are not disputed or novel. In addition to documentation submitted through Iowa's ADA process, Plaintiff has received formal ADA accommodation approval from the State of Texas for the same disabilities and functional limitations. This cross-jurisdictional recognition confirms that Plaintiff's limitations are genuine, ongoing, and objectively verifiable—further demonstrating that Defendants' denial of accommodations rested on subjective impressions of "competence," not lawful individualized assessment.

## M. Generative-AI Orders, Sanctions, and Disparate Enforcement

139. **(1/2/2025)** The court entered an order prohibiting parties from using generative AI to draft filings and requiring a "human drafted / human cite-checked" certification; the order warned of sanctions for hallucinated authority.

140. **(4/18/2025)** Postma's counsel filed a sanctions motion alleging AI drafting and purported misquotes of Iowa rules; the motion relied in part on non-legal "AI detection" blog sources and formatting inferences.

141. **(5/14/2025)** The court **struck** York's filings (including a motion/brief) and **awarded attorney's fees** as a sanction, stating the sanction was based on "repeated false citations," and requiring York to pull and verify each cited authority.

142. **(5/23–6/??/2025)** Postma filed a fee affidavit; York filed resistance asserting constitutional objections and disparate impact on disabled pro se access. The court **awarded the fees** as reasonable.

143. **(7/2/2025)** The court denied York's motion for leave to amend to add counterclaims, citing lack of "good cause," timing, and likely delay.

144. On **April 18, 2025**, Postma filed witness/exhibit materials and a motion after the court's deadline.

145. York alleges the court enforced deadlines and technical compliance against him, but tolerated late filings and re-briefing on the other side.

146. On July 2, 2025, after Plaintiff had requested ADA accommodations and while those requests remained denied or restricted, the Iowa District Court issued an order imposing monetary sanctions against Plaintiff based on alleged "hallucinated" legal citations attributed to Plaintiff's use of generative AI tools. The Court acknowledged Plaintiff's reliance on AI but imposed sanctions without providing accommodations that would have enabled citation verification, such as extended deadlines, structured guidance, or access to assistive tools. This order punished disability-related limitations after denying the accommodations necessary to prevent them.

**See Exhibit C**

147. At the pleading stage, Plaintiff is required only to plausibly allege facts that, taken as true, state claims for relief. All reasonable inferences must be drawn in Plaintiff's favor. Dismissal is improper where claims plausibly allege constitutional, statutory, or racketeering violations.

# V. CAUSES OF ACTION (COUNTS 1–12)
(York incorporates all preceding paragraphs into each Count as though fully set forth.)

## COUNT I — Violation of ADA Title II (Failure to Provide Reasonable Accommodations)
**42 U.S.C. §§ 12131–12134**
(Against Iowa Judicial Branch, ADA Coordinator Peggy Frericks (official capacity), Judge Sarah Crane (official capacity), Judge Robert Tiefenthaler (official capacity), Judge Patrick Tott (official capacity), and Receiver Corey R. Lorenzen (official capacity))

148. Plaintiff incorporates by reference all preceding paragraphs.

149. Title II of the Americans with Disabilities Act ("ADA") prohibits a public entity from excluding a qualified individual with a disability from participation in, or denying the benefits of, services, programs, or activities of a public entity, or otherwise subjecting such individual to discrimination. 42 U.S.C. § 12132.

150. The Iowa Judicial Branch, Iowa state courts, and court-appointed receivers acting pursuant to court authority are "public entities" within the meaning of Title II.

151. Plaintiff Kevin M. York is a qualified individual with disabilities, including dyslexia and ADHD, which substantially limit major life activities including reading accuracy and rate, written expression, executive functioning, and processing speed.

152. Plaintiff requested reasonable accommodations necessary to ensure **effective communication** and meaningful participation in judicial proceedings, as required by 28 C.F.R. § 35.160, including structured written communication, adequate processing time, clear task identification, and avoidance of compressed compliance timelines.

153. Plaintiff submitted a formal ADA accommodation request on August 5, 2025, following direct notice to the Iowa Judicial Branch ADA Coordinator on August 4, 2025, identifying his disabilities and functional limitations.

154. Defendants had actual knowledge of Plaintiff's disabilities, accommodation requests, and supporting documentation prior to imposing sanctions, filing restrictions, discovery enforcement, and other adverse procedural actions.

155. On September 10, 2025, Defendant Peggy Frericks, acting in her official capacity, formally denied Plaintiff's accommodation request without conducting an individualized assessment or engaging in the interactive process required by law.

156. Defendants' denial of accommodations after actual notice of Plaintiff's disabilities and functional limitations constitutes **deliberate indifference** to Plaintiff's federally protected rights, entitling Plaintiff to compensatory damages under Title II.

157. Defendants thereafter continued to process Plaintiff's case using rigid procedural rules, compressed deadlines, and compliance demands that were not equally accessible to Plaintiff given his documented disabilities.

158. As a result of Defendants' failure to provide reasonable accommodations, Plaintiff was excluded from meaningful participation in judicial services and proceedings, including the ability to file pleadings, respond to motions, and present claims and defenses on the merits.

159. Plaintiff does not seek review, reversal, or modification of any state-court judgment. Plaintiff challenges **independent violations of federal disability law** arising from Defendants' administrative, procedural, and access-to-court conduct, including failures to provide reasonable accommodations and effective communication.

160. Defendants denied reasonable accommodations despite objective recognition of Plaintiff's disabilities by other governmental entities, including a formal ADA accommodation approval issued by the State of Texas for the same functional limitations.

161. Defendants' denial of accommodations and continued enforcement of inaccessible procedures constitute discrimination under Title II of the ADA.

162. Plaintiff seeks declaratory and prospective injunctive relief to remedy ongoing ADA violations, as well as compensatory damages and other relief authorized by law.

163. Defendants' violations are ongoing and capable of repetition absent prospective injunctive relief.

**See Exhibit C**

# COUNT II — ADA Retaliation

**42 U.S.C. § 12203**
(Against Judge Sarah Crane (individual capacity for non-adjudicative acts),
Receiver Corey R. Lorenzen,
ADA Coordinator Peggy Frericks,
Nyemaster Goode, P.C. and the individually named Nyemaster attorneys,
American State Bank and its individually named officers and agents,
and Scott Postma)

164. Plaintiff incorporates by reference all preceding paragraphs.

165. Plaintiff engaged in protected activity under the ADA by requesting reasonable accommodations and asserting rights necessary for equal access to judicial proceedings.

166. Defendants had actual knowledge of Plaintiff's protected activity, disabilities, and accommodation requests.

167. After Plaintiff engaged in protected activity, Defendants subjected Plaintiff to materially adverse actions, including but not limited to:
- striking pleadings and filings;
- imposing monetary sanctions;
- denying leave to assert counterclaims;
- demanding compliance with objectively impossible timelines;
- characterizing ADA-compliant written communication as "noncooperation";
- threatening contempt or termination of operational authority; and
- expanding receivership authority to restrict Plaintiff's participation.

168. Defendants' actions would deter a reasonable person from engaging in protected activity under the ADA and did deter Plaintiff from further invoking his accommodation rights, constituting unlawful retaliation.

169. The adverse actions occurred after, and because of, Plaintiff's protected activity, establishing temporal proximity, retaliatory motive, and causation.

170. Defendants used Plaintiff's disability-related limitations as a pretext for punishment rather than providing reasonable accommodations, thereby chilling further invocation of ADA rights.

171. Defendants' conduct constitutes unlawful retaliation in violation of 42 U.S.C. § 12203.

172. The retaliatory acts alleged herein include administrative, procedural, and enforcement conduct outside the core adjudicative function and are therefore not protected by absolute judicial immunity.

173. Defendants' retaliatory acts were not limited to punishment for Plaintiff's protected ADA activity, but were **intertwined with and reinforced by discriminatory procedural enforcement**, selective sanctions, and exclusionary access-to-court practices. The same conduct that constituted retaliation under 42 U.S.C. § 12203 also functioned to deprive Plaintiff of equal protection and procedural due process, including by imposing coercive sanctions, denying access to filings and hearings, and enforcing rules in a manner that predictably penalized Plaintiff's disability-related limitations.

174. Defendants' actions therefore served **dual unlawful motives**: (a) retaliation for Plaintiff's invocation of ADA rights, and (b) suppression of Plaintiff's participation and claims through unequal and punitive procedural enforcement.

## COUNT III — Violation of Rehabilitation Act § 504 29 U.S.C. § 794

(Against the Iowa Judicial Branch, Judge Sarah Crane (official capacity), and ADA Coordinator Peggy Frericks (official capacity)

175. Plaintiff incorporates by reference all preceding paragraphs.

176. The Iowa Judicial Branch receives federal financial assistance and is subject to Section 504 of the Rehabilitation Act.

177. Defendants acted with deliberate indifference to Plaintiff's rights under § 504 by denying accommodations after actual notice and continuing to impose sanctions and procedural penalties that predictably excluded Plaintiff from equal participation. Defendants acted with deliberate indifference to Plaintiff's rights under § 504 **by reason of his disability** by denying accommodations…"

178. Plaintiff is an individual with disabilities within the meaning of § 504.

179. Defendants excluded Plaintiff from participation in, and denied the benefits of, judicial services and proceedings by:

- denying reasonable accommodations;
- failing to ensure effective communication;
- imposing inaccessible deadlines and procedures; and
- enforcing procedural rules in a manner that predictably penalized disability-related limitations.

180. Defendants denied accommodations and imposed sanctions despite knowledge that Plaintiff lacked equal access to judicial services without reasonable modifications.

181. The imposition of monetary sanctions and procedural penalties following Plaintiff's accommodation requests constitutes discrimination and retaliation prohibited by § 504.

182. Defendants' actions violated the Rehabilitation Act by denying Plaintiff meaningful and equal access to judicial services.

**See Exhibit C**

# COUNT IV — Violation of the Fourteenth Amendment (Procedural Due Process) 42 U.S.C. § 1983

(Against Judge Sarah Crane (individual capacity for non-adjudicative acts; official capacity for prospective relief), Judge Robert Tiefenthaler (individual capacity for administrative and non-adjudicative acts; official capacity for prospective relief), ADA Coordinator Peggy Frericks (individual capacity), Receiver Corey R. Lorenzen (individual capacity), Nyemaster Goode attorneys, Woods Fuller attorneys, American State Bank individual actors, and Scott Postma)

173. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

174. Plaintiff possessed constitutionally protected property and liberty interests, including but not limited to:

- meaningful access to the courts and the ability to present claims and defenses;
- the right to notice and a meaningful opportunity to be heard before adverse action;
- continued employment and earned compensation;
- control, management, and operation of closely held business entities and corporate assets;
- contractual rights and personal guarantor interests;
- protection from arbitrary, punitive, or coercive monetary penalties imposed without due process; and
- freedom from arbitrary or discriminatory governmental action affecting substantial property interests

175. Defendants acted under color of state law by exercising, administering, enforcing, or jointly invoking judicial, administrative, and court-delegated authority, including but not limited to:

- administering court access and ADA compliance within the Iowa Judicial Branch (Defendant Frericks);
- exercising court-delegated authority over Plaintiff's businesses, compensation, and participation through receivership powers (Defendant Lorenzen);
- enforcing procedural restrictions, sanctions, filing limitations, and access-to-court determinations through administrative and enforcement mechanisms (Defendant Judge Crane); and
- invoking, directing, and exploiting judicial enforcement processes in concert with state actors to impose sanctions, receivership control, and procedural exclusion (Defendants Nyemaster Goode, American State Bank, and Scott Postma).

176. Defendants deprived Plaintiff of constitutionally protected liberty and property interests through the Following procedural mechanisms, which were fundamentally unfair and constitutionally inadequate, including:

- denying reasonable accommodations after actual notice of disability;
- enforcing rigid procedural deadlines and compliance requirements inaccessible to a disabled pro se litigant;
- striking pleadings and denying leave to amend without accommodation;
- imposing monetary sanctions for errors directly attributable to denied accommodations; and
- empowering a receiver to curtail Plaintiff's participation based on disability-related limitations rather than lawful adjudication.

177. This concerted conduct constituted joint participation with the State and rendered the private defendants' actions fairly attributable to the State for purposes of liability under 42 U.S.C. § 1983.

178. Defendants deprived Plaintiff of procedural due process by engaging in a coordinated course of conduct that included:

- denying ADA accommodations after actual notice of Plaintiff's disabilities;
- barring Plaintiff from meaningful participation in proceedings affecting property rights;
- imposing coercive sanctions and fines without adequate notice;
- conducting surprise or inadequately noticed hearings;
- enforcing punitive deadlines and penalties while Plaintiff lacked ADA-compliant access; and
- manufacturing noncompliance narratives to justify punishment.

179. Defendant Judge Robert Tiefenthaler, acting in an administrative and non-adjudicative capacity, denied Plaintiff ADA accommodations and affirmatively represented that Plaintiff was "not part of the case," thereby excluding Plaintiff from proceedings directly affecting his interests.

180. Despite this exclusion, Judge Tiefenthaler thereafter caused Plaintiff to be summoned to a hearing without adequate notice or clarity as to its purpose, depriving Plaintiff of a meaningful opportunity to prepare or respond.

181. Following that hearing, Judge Tiefenthaler imposed or authorized coercive monetary fines of approximately $500 per day against a corporate entity controlled by Plaintiff until unspecified demands were satisfied, despite Plaintiff's lack of ADA accommodations, notice, or effective communication.

182. These acts were administrative, managerial, and enforcement-oriented, not core adjudicative functions, and therefore are not protected by absolute judicial immunity.

183. The imposition of escalating daily fines without meaningful notice, clarity of requirements, or ADA-compliant access constituted arbitrary governmental action in violation of the Due Process Clause.

184. Private defendants—including attorneys, bank officers, and adverse parties—were willful participants in joint action with state officials and court-appointed actors by supplying false or misleading narratives, withholding material information, requesting coercive judicial enforcement, and leveraging court authority to impose sanctions, receivership control, and procedural exclusion.

185. The challenged conduct was administrative, procedural, and enforcement-based, not a good-faith adjudication of disputed facts, and therefore falls outside absolute judicial immunity.

186. Defendants acted with deliberate indifference to Plaintiff's constitutional rights by knowingly denying accommodations and then punishing Plaintiff for the predictable consequences of proceeding without them.

187. Defendants coordinated their actions—including judicial officers, the ADA Coordinator, the Receiver, opposing counsel, and bank actors—to apply coercive pressure, restrict participation, and deprive Plaintiff of property and court access without due process.

188. Plaintiff does not seek appellate review, reversal, or modification of any state-court judgment.

189. Plaintiff challenges **independent constitutional violations** arising from Defendants' administrative, procedural, and enforcement conduct, including denial of ADA access, lack of notice, surprise hearings, and coercive fines.

190. Plaintiff challenges independent constitutional violations arising from Defendants' administrative, procedural, and enforcement conduct, including denial of ADA access, lack of notice, surprise hearings, and coercive fines, **which occurred outside the core adjudicative function and independently of any final state-court judgment.**

191. Plaintiff seeks declaratory and prospective injunctive relief to prevent ongoing and future violations, including enforcement of ADA-compliant procedures and constitutionally adequate notice and hearing protections.

191. As a direct and proximate result of Defendants' conduct, Plaintiff suffered:

- loss of business control and revenue;
- coercive financial penalties;
- denial of meaningful court access;
- reputational harm;
- emotional distress; and
- continuing risk of further arbitrary deprivation.

192. Defendants' actions violated the Fourteenth Amendment to the United States Constitution.

193. Defendants' actions were a moving force behind Plaintiff's loss of property, exclusion from judicial participation, and cascading procedural harm.

194. Defendants thereby violated Plaintiff's procedural due process rights under the Fourteenth Amendment.

## COUNT V –Violation of the Fourteenth Amendment (Equal Protection)

## 42 U.S.C. § 1983

(Against Judge Sarah Crane (individual capacity for non-adjudicative acts; official capacity for prospective relief), ADA Coordinator Peggy Frericks (individual capacity), Receiver Corey R. Lorenzen (individual capacity), Nyemaster Goode, P.C. and individual Nyemaster attorneys, American State Bank individual actors, and Scott Postma (individual capacity))

195. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

196. The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from intentionally treating an individual differently from others similarly situated without a rational basis, and prohibits selective enforcement motivated by improper considerations including disability, animus, or favoritism. Plaintiff was similarly situated to represented litigants and institutional parties in the same proceedings with respect to procedural obligations, deadlines, access to clarification, and enforcement standards.

197. Plaintiff was similarly situated to represented litigants and opposing counsel—including Nyemaster Goode attorneys and parties aligned with Scott Postma—in all material respects relevant to court access, procedural compliance, deadlines, filing requirements, and enforcement standards.

198. Despite this similarity, Defendants intentionally subjected Plaintiff to more onerous rules, harsher enforcement, and punitive sanctions, while simultaneously affording materially more favorable treatment to opposing counsel and aligned parties, including but not limited to:

- accepting late, supplemental, or defective filings submitted by Nyemaster Goode attorneys;
- permitting post-deadline briefing, evidentiary submissions, and corrective filings by Plaintiff's adversaries;
- overlooking or excusing procedural defects by represented parties;
- granting extensions, clarifications, or informal accommodations to counsel; while
- denying Plaintiff comparable flexibility, clarification, or accommodation.

199. By contrast, Defendants selectively enforced procedural rules against Plaintiff by:

- striking Plaintiff's pleadings for technical or formatting issues;
- denying leave to amend despite earlier instruction that leave was required;
- imposing monetary sanctions for errors attributable to disability-related limitations;
- enforcing compressed and punitive deadlines inaccessible to a disabled pro se litigant; and
- construing Plaintiff's ADA-compliant written communication as "noncooperation."

200. The disparate treatment and selective enforcement alleged herein were not merely incidental to ordinary case management. They were intertwined with, and in substantial part driven by, Plaintiff's protected ADA activity. After Plaintiff requested accommodations and insisted on disability-necessary written communication, Defendants escalated procedural punishment—sanctions, strikes, deadline traps, and participation restrictions—while tolerating comparable or worse procedural defects by represented adversaries. Thus, the same course of conduct constituted both (a) retaliation for protected ADA activity (COUNT II) and (b) intentional unequal treatment and selective enforcement (this COUNT V), carried out to suppress Plaintiff's participation and advantage favored parties.

201. Defendant Peggy Frericks knowingly denied Plaintiff reasonable accommodations while allowing court processes to proceed under standards that were effectively inaccessible to Plaintiff, thereby facilitating disparate treatment rather than equal access.

202. Defendant Receiver Lorenzen amplified and operationalized this disparate treatment by imposing document demands, deadlines, and enforcement measures on Plaintiff that were not imposed on similarly situated parties or custodians, while characterizing Plaintiff as noncompliant despite documented cooperation.

203. Defendant Judge Crane, acting in an administrative, managerial, and enforcement capacity, tolerated procedural deviations and deadline violations by Plaintiff's adversaries while rigidly enforcing rules against Plaintiff, resulting in asymmetric procedural burdens and outcomes.

204. Private defendants—including Nyemaster Goode attorneys, American State Bank individual actors, and Scott Postma—were knowing beneficiaries of and willful participants in this disparate treatment, including by:

- requesting or encouraging coercive enforcement measures;
- supplying misleading or incomplete narratives regarding Plaintiff's conduct;
- withholding material information while accusing Plaintiff of noncompliance; and
- leveraging judicial authority to obtain strategic advantage unavailable absent state involvement.

205. The disparate treatment described herein was intentional, lacked any rational basis related to legitimate governmental objectives, and was motivated by improper considerations including disability bias, hostility toward a disabled pro se litigant, and favoritism toward local counsel and aligned financial interests.

206. Defendants' conduct constituted selective enforcement and unequal treatment under color of state law, denying Plaintiff equal protection of the laws in violation of the Fourteenth Amendment.

207. The unequal enforcement was not an isolated error, but part of a pattern and practice of favoring represented parties and institutional actors while disadvantaging Plaintiff based on disability status and lack of counsel.

208. As a direct and proximate result of Defendants' Equal Protection violations, Plaintiff suffered:
- loss of meaningful access to the courts;
- deprivation of property and business interests;
- imposition of coercive monetary penalties;
- litigation-driven financial harm;
- reputational injury; and
- emotional distress.

209. Plaintiff seeks declaratory and prospective injunctive relief to prevent continued unequal enforcement, as well as compensatory damages and all other relief authorized by law.

# COUNT VI — 42 U.S.C. §1983 — Conspiracy to Deprive Constitutional and Statutory Rights

(Fourteenth Amendment; ADA / Rehabilitation Act Interference)
(Against ADA Coordinator Peggy Frericks, Receiver Corey R. Lorenzen, Nyemaster Goode attorneys, American State Bank individual actors, Woods Fuller attorneys, and Scott Postma)

210. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

211. At all relevant times, Defendants reached a meeting of the minds to deprive Plaintiff of federally protected rights, including:

- procedural due process;
- equal protection of the laws;
- meaningful access to the courts;
- and rights secured by the ADA and Rehabilitation Act.

212. The conspiracy arose **after Defendants had actual knowledge** of Plaintiff's disabilities and accommodation requests and intensified following Plaintiff's invocation of ADA-protected rights in August–September 2025.

213. **State actors** (Judge Crane in non-adjudicative capacities, ADA Coordinator Frericks, and Receiver Lorenzen) and **private actors** (Nyemaster Goode attorneys, Woods Fuller attorneys, American State Bank, and Scott Postma) knowingly participated in a coordinated course of conduct to:

- deny reasonable accommodations;
- enforce inaccessible procedural requirements;
- manufacture narratives of "noncompliance";
- justify sanctions, filing restrictions, and receivership expansion; and
- suppress Plaintiff's ability to present claims and defenses on the merits.

214. The agreement was evidenced by parallel conduct, coordinated filings, shared factual narratives, and mutually reinforcing actions that cannot be explained by independent decision-making.

215. **Overt acts taken in furtherance of the conspiracy** include, but are not limited to:

a.  ADA Coordinator Frericks denying accommodations on September 10, 2025, without individualized assessment, despite prior notice and documentation;

b.  Receiver Lorenzen issuing sweeping document demands with objectively impossible 24–48 hour deadlines during a holiday period, then characterizing ADA-compliant written responses as "noncooperation";

c.  Nyemaster Goode attorneys filing sanctions and procedural motions premised on disability-linked errors while opposing accommodations that would prevent such errors;

d.  American State Bank coordinating with litigation actors to apply financial and operational pressure contemporaneous with receivership escalation;

e.  Scott Postma supplying or endorsing false narratives regarding Plaintiff's cooperation, ownership, and control to support adverse enforcement actions;

f.  Omission or mischaracterization of Plaintiff's written cooperation and accommodation-related communications in filings submitted to the court; and

g.  Judicial adoption of these narratives through administrative and enforcement actions taken without providing ADA-compliant access or process.

216. These acts were interdependent and mutually reinforcing: private actors supplied narratives and pressure; state actors supplied enforcement authority; the receiver supplied operational leverage.

217. Defendants knew or reasonably should have known that Plaintiff's alleged "noncompliance" and procedural errors were foreseeable consequences of proceeding without accommodations, yet used those consequences as grounds for punishment rather than modification.

218. The conspiracy's object and effect were to:

- exclude Plaintiff from meaningful participation;
- foreclose adjudication on the merits;
- coerce surrender of business control;
- and retaliate against Plaintiff for invoking protected rights.

219. Plaintiff suffered **overt constitutional injury** as a direct and proximate result of the conspiracy, including loss of property interests, exclusion from judicial processes, reputational harm, and severe emotional distress.

220. Defendants' conduct violated 42 U.S.C. § 1983 by conspiring to deprive Plaintiff of rights secured by the Constitution and federal law.

221. The acts alleged herein involved **administrative, procedural, and enforcement conduct**, not protected adjudicative decision-making, and therefore are not shielded by absolute judicial immunity.

## COUNT VII — Civil RICO (18 U.S.C. §1962(c))

(Against Nyemaster Goode Attorneys, American State Bank individual actors, Scott Postma, Woods Fuller Attorneys, and Receiver Corey R. Lorenzen)

222. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

## A. The Enterprise

223. Defendants constituted an **association-in-fact enterprise** within the meaning of 18 U.S.C. § 1961(4), consisting of:

- Scott Postma;
- Nyemaster Goode attorneys;
- Woods Fuller attorneys;
- American State Bank officers and agents;
- Receiver Corey R. Lorenzen;
- and other associated individuals and entities.

224. The enterprise had a **common purpose**: to wrest control of Plaintiff's businesses and assets through litigation pressure, receivership expansion, and judicial enforcement mechanisms, without lawful consideration or assumption of financial risk.

225. The enterprise maintained **relationships** through coordinated litigation strategy, information sharing, bank communications, and court filings.

226. The enterprise possessed **longevity**, operating continuously from at least **2018 through 2025**, sufficient to pursue its objectives.

## B. Conduct or Participation

227. Each Defendant knowingly conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c). Each Defendant participated in the operation or management of the enterprise, either by directing racketeering activity or by knowingly implementing decisions that furthered the enterprise's fraudulent objectives.

228. Defendants operated an enterprise engaged in a pattern of racketeering activity for the purpose of:

1. unlawfully seizing the business,
2. obtaining corporate assets without contribution,
3. collapsing the company to force a takeover,
4. and leveraging litigation pressure to acquire ownership.

## C. Predicate Acts — Rule 9(b) Satisfied

229. From at least 2018 through 2025, Defendants committed repeated acts of **wire fraud (18 U.S.C. § 1343)** and **mail fraud (18 U.S.C. § 1341)**, including but not limited to:

a. transmitting false and misleading emails, pleadings, motions, and bank communications across state lines that misrepresented:
1. Plaintiff's cooperation;
2. ownership and control status;
3. document availability;
4. alleged noncompliance; and
5. the necessity and scope of receivership authority;

b. omitting material facts, including Plaintiff's documented cooperation, ADA accommodation requests, and exculpatory communications;

c. submitting or relying upon these misrepresentations to induce:
1. sanctions;
2. procedural exclusion;
3. receivership expansion;

4.   utility shutoffs;
5.   payroll disruption; and
6.   judicial enforcement actions.

230. These communications were sent on specific dates reflected in court filings, bank correspondence, and litigation emails, including but not limited to filings and communications occurring in **April–May 2025**, **July 2025**, and **September 2025**, and were integral to Defendants' scheme.

231. Predicate acts include:

1.   wire fraud (false emails, misrepresentations, fabricated narratives),
2.   mail fraud,
3.   bank fraud,
4.   obstruction of justice,
5.   intimidation,
6.   and extortion through threat of judicial sanctions.

## D. Pattern of Racketeering Activity

232. Defendants' predicate acts were related, sharing similar purposes, victims, methods, and results.

233. Defendants' acts constituted closed-ended continuity, spanning more than seven years, and open-ended continuity, posing a continued threat of repetition through ongoing litigation, enforcement, and receivership mechanisms.

234. From at least 2018 through 2025, Defendants conducted and participated in the affairs of the enterprise through a pattern of racketeering activity, including repeated acts of wire fraud and mail fraud, by transmitting false and misleading emails, pleadings, motions, and bank communications across state lines that misrepresented Plaintiff's cooperation, ownership status, document availability, and alleged noncompliance, for the purpose of inducing judicial sanctions, receivership expansion, and asset seizure.

235. Representative examples of such racketeering acts include, but are not limited to:

(a) emails and written communications transmitted by Nyemaster Goode attorneys and American State Bank officers to judicial officers, the Receiver, or third parties falsely asserting that Plaintiff failed to cooperate or withheld documents, when Defendants knew or had reason to know the materials were held by banks, prior counsel, or third-party custodians;

(b) motions, briefs, and filings submitted through interstate electronic filing systems that omitted Plaintiff's documented cooperation while affirmatively accusing Plaintiff of noncompliance;

(c) bank communications and coordination related to utilities, payroll disruption, or financial control that were used to manufacture default, instability, or coercive leverage; and

(d) coordinated requests for sanctions, receivership expansion, and procedural exclusion premised on knowingly false or misleading factual narratives.

236. Many predicate acts occurred through communications and records exclusively within Defendants' possession, custody, or control, justifying limited early discovery under Rule 26(d)

237. These acts were integral to Defendants' scheme to wrest control of Plaintiff's businesses and assets without lawful consideration and could not have been accomplished absent the misuse of judicial and receivership processes.

238. Plaintiff's injuries were caused by Defendants' fraudulent use of judicial processes, not by adverse rulings on the merits of any claim.

239. The receivership was used as a vehicle for the enterprise.

## E. Proximate Cause and Damages

240. Defendants' racketeering acts were the direct and proximate cause of Plaintiff's injuries, including:

- loss of business control and revenue;
- seizure and devaluation of corporate assets;
- payroll interruption and customer loss;
- litigation-induced financial collapse;
- out-of-pocket expenses; and
- loss of enterprise value exceeding $100,000,000.

241. Plaintiff's injuries were a foreseeable and intended consequence of Defendants' scheme and flowed directly from Defendants' racketeering conduct.

## F. Statute of Limitations & Equitable Tolling

242. Defendants concealed their misconduct through misrepresentation, omission, and abuse of judicial processes, tolling the statute of limitations under principles of equitable tolling and fraudulent concealment.

243. Many of the predicate communications, coordination records, and decision-influencing materials underlying Plaintiff's claims are exclusively within Defendants' possession, custody, or control, including internal bank communications, attorney-client-adjacent nonprivileged coordination records, correspondence with the Receiver, and drafts/versions of submissions that omitted Plaintiff's documented cooperation and accommodation requests. These materials are also time-sensitive due to routine deletion policies. Accordingly, Plaintiff will seek limited, targeted early discovery under Fed. R. Civ. P. 26(d)(1), narrowly confined to (a) communications concerning sanctions requests, "noncooperation" narratives, receivership expansion, utility/payroll disruptions, and accommodation responses; and (b) records establishing selective enforcement and disparate procedural treatment, including filing-timeline deviations and late-briefing permissions afforded to represented parties but denied to Plaintiff.

## G. Relief

244. Plaintiff seeks all relief available under 18 U.S.C. § 1964, including treble damages, costs, attorneys' fees, injunctive relief, and equitable remedies.

# RICO STANDING (18 U.S.C. § 1964(c))

## RICO Standing and Proximate Cause

245. Plaintiff has standing to bring this civil RICO action pursuant to 18 U.S.C. § 1964(c) because he suffered concrete financial loss to his business and property by reason of Defendants' violations of 18 U.S.C. § 1962. Plaintiff's injuries include loss of business control, lost revenues, forced interruption of payroll and utilities, loss of customers and contracts, litigation-induced insolvency, and destruction of enterprise value.

246. These injuries were the direct, proximate, and foreseeable result of Defendants' racketeering acts. Defendants' fraudulent communications and coordinated misuse of judicial enforcement mechanisms were specifically intended to induce sanctions, expand receivership authority, disrupt operations, and force asset seizure. No independent intervening cause breaks the causal chain between Defendants' racketeering conduct and Plaintiff's injuries.

## NOERR–PENNINGTON PREEMPTION REBUTTAL

### Noerr–Pennington Doctrine Does Not Apply

247. Defendants are not immune under the Noerr–Pennington doctrine. Plaintiff does not challenge good-faith petitioning or legitimate advocacy. Rather, Plaintiff challenges Defendants' knowing use of objectively false representations, material omissions, and sham litigation tactics designed to obtain judicial enforcement and receivership control through fraud.

248. Defendants' conduct falls within the **sham litigation and fraud exceptions** to Noerr–Pennington because it involved deliberate misrepresentation of facts, suppression of exculpatory information, and abuse of court processes for purposes unrelated to legitimate adjudication. Fraudulent use of litigation and judicial enforcement mechanisms is not protected petitioning activity.

## LITIGATION-AS-RACKETEERING CLARIFICATION

### Litigation Conduct as Racketeering Activity

249. Plaintiff does not allege that ordinary litigation constitutes racketeering. Rather, Defendants engaged in litigation-related racketeering, including mail fraud and wire fraud, by transmitting knowingly false pleadings, emails, motions, and bank communications across state lines for the purpose of inducing judicial sanctions, procedural exclusion, receivership expansion, and asset seizure.

250. Where, as here, litigation activity is used as a vehicle for fraud, coercion, and extortion, and is undertaken pursuant to an enterprise's scheme to unlawfully obtain property and control, such conduct constitutes racketeering activity under 18 U.S.C. §§ 1341 and 1343 and may serve as RICO predicates.

## BANK-SPECIFIC RICO FACILITATION (AMERICAN STATE BANK)

### American State Bank's Knowing Facilitation of the RICO Enterprise

251. Defendant American State Bank, through its officers and agents, knowingly facilitated and participated in the enterprise's racketeering scheme by leveraging its financial control, utility access, and institutional authority in coordination with attorneys and court-appointed actors.

252. American State Bank's conduct included, but was not limited to:
- supplying misleading or incomplete financial narratives to support enforcement actions;
- coordinating utility shutoffs and financial disruptions timed to litigation events;
- withholding material banking information while accusing Plaintiff of noncompliance;
- enabling receivership expansion without assuming corresponding financial risk; and
- exploiting judicial enforcement mechanisms to obtain outcomes unavailable through private action alone.

253. American State Bank's actions were not ministerial or passive, but knowing and substantial assistance to the enterprise, rendering it liable as a RICO participant and as an aider and abettor whose conduct was a moving force behind Plaintiff's injuries.

## COUNT VIII — Civil RICO Conspiracy (18 U.S.C. §1962(d))
(Against all Non-Judicial Defendants)

254. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein, including but not limited to the enterprise, racketeering acts, continuity, causation, and damages alleged in COUNT VII.

255. Defendants knowingly agreed, combined, and conspired to conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), and are therefore liable under 18 U.S.C. § 1962(d).

256. Each Defendant knew the essential nature, scope, and purpose of the enterprise and knowingly agreed that at least one member of the conspiracy would commit racketeering acts, including mail fraud and wire fraud, in furtherance of the enterprise's unlawful objectives.

257. The object of the conspiracy was to unlawfully obtain control over Plaintiff's businesses and assets by means of fraudulent litigation tactics, misuse of judicial enforcement mechanisms, receivership expansion, financial disruption, and coercive sanctions, without lawful consideration or assumption of corresponding financial risk.

258. Defendants knowingly agreed to pursue this objective through coordinated conduct, including:

- the preparation, submission, and reliance upon false or misleading pleadings, motions, and communications;
- the concealment of material facts and exculpatory information;
- the coordinated pursuit of sanctions, procedural exclusion, and receivership authority;
- the leveraging of bank control, utilities, payroll, and financial pressure to manufacture instability; and
- the exploitation of judicial and administrative processes as instruments of coercion.

259. Each Defendant knowingly joined and participated in the conspiracy at various times and in various roles, understanding that the success of the scheme depended upon coordinated action among attorneys, bank actors, court-appointed officials, and adverse parties.

260. Overt acts in furtherance of the conspiracy include, but are not limited to:

- transmitting knowingly false or misleading interstate emails, pleadings, and bank communications;
- requesting and supporting sanctions and enforcement actions based on fabricated or incomplete narratives;
- coordinating financial disruptions and utility shutoffs to coincide with litigation events;
- withholding material documents while accusing Plaintiff of noncompliance; and
- seeking receivership expansion and procedural exclusion to force asset seizure and operational control.

261. The conspiracy was ongoing and continuous from at least 2018 through 2025, and posed a continued threat of repetition through ongoing litigation, enforcement actions, and receivership mechanisms.

262. Defendants committed these acts knowingly and willfully, with the intent to further the enterprise's unlawful objectives and with knowledge that their conduct would cause direct injury to Plaintiff's business and property.

263. Plaintiff was injured in his business and property by overt acts committed in furtherance of the conspiracy, including loss of business control, loss of revenue, payroll interruption, customer loss, financial collapse, and destruction of enterprise value.

264. Each Defendant is jointly and severally liable for all acts committed by co-conspirators in furtherance of the RICO conspiracy.

265. Plaintiff seeks all relief available under 18 U.S.C. § 1964, including treble damages, injunctive relief, costs, attorneys' fees, and equitable remedies.

## COUNT IX — Fraud and Fraudulent Concealment
(Against Scott Postma, Nyemaster Goode Attorneys, Woods Fuller Attorneys, American State Bank individual actors, Receiver Corey R. Lorenzen)

266. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

267. Defendants knowingly misstated:

1. Plaintiff's cooperation,
2. ownership structure,
3. financial condition of the company,
4. document availability,
5. and the true purpose of the receivership.

268. Defendants concealed:

1. bank communications,
2. payroll records,
3. exculpatory evidence,
4. and Plaintiff's initial cooperation email.

269. Plaintiff relied on these misrepresentations to his detriment.

## COUNT X — Tortious Interference with Business Expectancies
(Against Scott Postma, Nyemaster Goode Attorneys, American State Bank individual actors, Receiver Corey R. Lorenzen)

270. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

271. Plaintiff had ongoing business relationships with:

1. Clariant,
2. national clients,
3. vendors,
4. lenders,
5. contractors.

272. Defendants intentionally and improperly interfered with Plaintiff's existing and prospective business relationships by engaging in wrongful acts, including:

(a) causing or facilitating the termination or interruption of utilities necessary for business operations;
(b) (inducing or causing payroll interruptions and wage instability;
(c) pressuring, discouraging, or intimidating customers, vendors, and business partners;
(d) disseminating false or misleading narratives of business instability, noncompliance, or financial distress; and
(e) threatening Plaintiff's termination, exclusion, or loss of operational authority.

273. Defendants accomplished this interference through improper means, including misrepresentation, coercion, abuse of judicial and receivership processes, misuse of court authority, and intentional interference with utilities, payroll, and contractual performance.

274. These acts caused substantial financial damages.

## COUNT XI — Intentional Infliction of Emotional Distress
(Receiver Corey R. Lorenzen, Nyemaster Goode Attorneys, Woods Fuller Attorneys, Scott Postma, and American State Bank individual actors)

275. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

276. Defendants' conduct was extreme and outrageous, including:

1. using disability as a ground for termination,
2. forcing impossible deadlines,
3. threatening contempt for requesting ADA accommodations,
4. and placing Plaintiff under months of discriminatory litigation pressure.

277. Defendants acted intentionally or recklessly.

278. Plaintiff suffered severe emotional distress.

## COUNT XII — ABUSE OF PROCESS
(Against Nyemaster Goode, Scott Postma, American State Bank, and Receiver Lorenzen)

279. Plaintiff reincorporates all preceding paragraphs as if fully set forth herein.

280. Defendants made use of legal process—including motions practice, receivership authority, sanctions proceedings, document demands, and court enforcement mechanisms—not to achieve legitimate adjudicative ends, but to accomplish improper purposes unrelated to the merits of the underlying dispute.

281. Defendants' improper purposes included, inter alia:

- forcing Plaintiff from operational control of his businesses;
- manufacturing default and "noncompliance" narratives;
- retaliating against Plaintiff for invoking ADA-protected rights;
- coercing surrender of corporate assets and authority;
- inflicting financial collapse through litigation pressure;
- and positioning Defendants to seize control at a distressed valuation.

282. Defendants committed overt acts in furtherance of this abuse of process, including but not limited to:

- demanding production of thousands of documents within 24–48 hours during a holiday week, knowing compliance was impossible;

- omitting Plaintiff's documented cooperation from filings;
- obtaining documents secretly from third parties and accusing Plaintiff of withholding them;
- filing motions premised on false or misleading factual narratives;
- invoking sanctions, termination, or pay reduction based expressly on Plaintiff's disability-related limitations;
- and leveraging the receivership as a punitive and coercive tool rather than a neutral remedial mechanism.

283. The legal processes invoked by Defendants were perverted after issuance and used as weapons to achieve collateral objectives—namely retaliation, coercion, and business seizure—rather than the lawful purposes for which such processes exist.

284. Defendants' conduct constitutes abuse of process under applicable state and federal law and was undertaken willfully, maliciously, and in conscious disregard of Plaintiff's rights.

285. As a direct and proximate result of Defendants' abuse of process, Plaintiff suffered substantial damages, including:
- loss of business operations and income;
- reputational harm;
- emotional distress;
- litigation-induced financial collapse;
- and deprivation of property and liberty interests.

286. Defendants' abuse of process forms part of the broader pattern of racketeering activity, civil conspiracy, and deprivation of rights alleged herein.

287. Plaintiff seeks compensatory damages, punitive damages where permitted, equitable relief, costs, attorneys' fees where recoverable, and all other relief deemed just and proper.

288. Plaintiff does not seek review, reversal, or modification of the January 30, 2025 show-cause proceedings. Plaintiff relies on those events solely as evidence of ongoing retaliation, coercive enforcement, and denial of ADA-compliant access, which continue to cause irreparable harm and necessitate prospective federal injunctive relief.

## VI. PRAYER FOR RELIEF

Plaintiff requests judgment:

A. Compensatory damages in an amount to be proven at trial;
B. Treble damages under RICO;
C. Punitive damages against non-immune defendants where permitted;
D. Declaratory relief;
E. Plaintiff respectfully requests prospective injunctive relief prohibiting Defendants, their agents, and all persons acting in concert with them from:

    i. enforcing coercive monetary fines, sanctions, or penalties imposed without ADA-compliant access, adequate notice, and a meaningful opportunity to be heard;

    ii. expanding or exercising receivership authority to restrict Plaintiff's participation, compensation, or control based on alleged noncompliance attributable to denied accommodations;

    iii. selling, transferring, encumbering, dissipating, or otherwise disposing of business assets obtained or controlled through the challenged conduct;

    iv. retaliating against Plaintiff for asserting rights protected by the ADA, the Rehabilitation Act, or the Constitution; and

v.   administering judicial or quasi-judicial processes in a manner that denies Plaintiff meaningful ADA-compliant access.

F.   Costs and litigation expenses and reasonable fees to the extent recoverable;

G.   Such other relief as the Court deems just and proper.

An award of compensatory damages, treble damages under RICO, punitive damages where permitted, attorneys' fees and costs, and such equitable relief as necessary, with total damages reasonably expected to exceed several hundred million dollars.

## VII. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully Submitted,

\s\ **Kevin M. York**

Kevin M.York
Plaintiff, Pro Se
Mailing: 3731 S. Glenstone Ave., Box 205 Springfield, MO 65804
Phone: (830) 643-4345
Email: LitFoundation@outlook.com
Date:12/31/2025

# CERTIFICATE OF SERVICE

(For Service by U.S. Marshals Service)

I hereby certify that, following issuance of summons, Plaintiff will submit the required summonses and USM-285 forms to the United States Marshals Service, requesting service of process upon all Defendants pursuant to Federal Rule of Civil Procedure 4(c)(3).

Plaintiff further certifies that no Defendant has been personally served by Plaintiff, and that service will be effected solely by the U.S. Marshals Service at the addresses listed for each Defendant in Section A of this Complaint, or at any updated addresses provided by the Marshals.

/s/ Kevin Michael York

Kevin Michael York
Plaintiff, Pro Se
3731 S. Glenstone Ave., Box 205
Springfield, Missouri 65804
Email: LitFoundation@outlook.com
Phone: 830-643-4345

# EXHIBIT SUMMARY SHEET

(Filed in Support of Complaint, Motion for Temporary Restraining Order, and Motion for Preliminary Injunction)

| Exhibit | Description | Purpose / Legal Relevance |
|---|---|---|
| **Exhibit A** | Plaintiff's Written ADA Accommodation Requests | Establishes notice of disability, protected activity, and request for reasonable accommodations under the ADA |
| **Exhibit B** | ADA Accommodation Denials (Iowa Judicial Branch and Sioux County Courts) | Demonstrates denial of accommodations, lack of interactive process, and deliberate indifference |
| **Exhibit C** | Sanctions Orders and Monetary Fine Assessments | Evidence of coercive enforcement, retaliation, and procedural punishment imposed without ADA-compliant access |
| **Exhibit D** | Receiver Corey R. Lorenzen Email Demanding Production of Approximately 8,000 Documents | Shows impossible compliance demands, misuse of receivership authority, and procedural coercion |
| **Exhibit E** | State of Texas ADA Accommodation Approval | Confirms objective recognition of Plaintiff's disabilities and reasonable accommodations by another governmental entity |
| **Exhibit F** | Chronological Timeline of Events (2018–2025) | Establishes continuity, pattern of conduct, retaliation, racketeering activity, and irreparable harm |

Plaintiff reserves the right to supplement these exhibits as discovery proceeds.

**Iowa Judicial Branch Disability Accommodation Request Form for Court Proceedings**
For people who qualify with a disability as defined by the
Americans with Disabilities Act (ADA) and § 504 of the Rehabilitation Act of 1973

| | | |
|---|---|---|
| 1. | Name of person submitting request: | Kevin M. York |
| 2. | Date request submitted (mo/day/year): | 08/04/2025 |
| 3. | E-mail or daytime phone number with area code: | Kevin.York@ozonesolutions.com / 830-643-4345 |
| 4. | County where the case is located: | Sioux County |
| 5. | Case number (4 letters – 6 numbers): | 030754 |
| 6. | Case title (plaintiff name vs. defendant name): | Scott Postma VS. KEVIN YORK, et al, |
| 7. | Date of scheduled court proceeding (mo/day/year): | 10/21/2025 |
| 8. | Time when the court proceeding will begin: | ? |

9. **I request the following type of accommodation (check one with an "X"):**

|   | | |
|---|---|---|
| | a. | American Sign Language (ASL) interpreter* |
| | b. | Signed English interpreter* |
| | c. | Other sign language interpreter (describe):* |
| | d. | Assistive listening device** |
| x | e. | Other (describe):** |

Please see attached

---

**\*SIGN LANGUAGE REQUESTS:** Iowa law requires that a request for a sign language interpreter (ASL, Signed English, or other sign language) must be submitted within three (3) days after receiving notice of a court proceeding. If notice of a court proceeding is received less than five (5) days prior to the proceeding, a request for a sign language interpreter must be submitted as soon as practicable or a continuance may be requested.

**\*\*ASSISTIVE LISTENING DEVICES AND OTHER REQUESTS:** A request should be submitted seven (7) days before a scheduled court proceeding if possible.

**Instructions:** This form may be emailed or printed and delivered to the Disability Access Coordinator in the judicial district where the case is located. To obtain an address for mailing or personal delivery of a form, call or email the Disability Access Coordinator for the district. To learn which district your county is in, go to the Iowa courts' website at: https://www.iowacourts.gov/for-the-public/ada/

**Disability Access Coordinators**

| District | Coordinator Name | Email | Telephone |
|---|---|---|---|
| 1 | Ashley Boquist | ashley.boquist@iowacourts.gov | (319) 833-3282 |
| 2 | Scott Hand | scott.hand@iowacourts.gov | (641) 421-0990 |
| 3 | Peggy Frericks | peggy.frericks@iowacourts.gov | (712) 279-6035 |
| 4 | Angela Collinson | angela.collinson@iowacourts.gov | (712) 328-5883 |
| 5 | Toni Stevens | toni.stevens@iowacourts.gov | (515) 286-3394 |
| 6 | Julie Fette | julie.fette@iowacourts.gov | (319) 398-3920 ext. 1105 |
| 7 | Dave Tristan | hijinio.tristan@iowacourts.gov | (563) 328-4145 |
| 8 | Cathy Reck | cathy.reck@iowacourts.gov | (641) 684-6502 |
| Appellate Courts | Christine Mayberry | christine.mayberry@iowacourts.gov | (515) 348-4700 |

NOTE: Disability Access Coordinators **cannot provide legal advice** about how to handle a case. They can only help you obtain a reasonable accommodation so you can effectively participate in the court proceeding or other court event.

A person who is deaf or hard of hearing may call **Relay Iowa TTY at 1-800-735-2942** for telephone relay service.

(Rev. 9-7-2022)

Exhibit A

**ATTACHMENT TO ADA ACCOMMODATION REQUEST FORM – "OTHER"**

Name: Kevin M. York
Case No.: LACV030754
Court: Iowa District Court for Sioux County – Business Specialty Court
Date: August 4, 2025

---

**Disability Disclosure**

Pursuant to Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act, I respectfully request reasonable accommodations to ensure meaningful access to the court. These requests are supported by a comprehensive psychoeducational evaluation dated July 17, 2025, diagnosing the following conditions:

- Specific Learning Disorder with Impairment in Reading – Dyslexia *(DSM-5-TR F81.0)*
- ADHD, Predominantly Inattentive Type *(DSM-5-TR F90.0)*

I have previously notified the Court of these impairments in prior filings and resistances, including my efforts to manually verify citations and reduce formatting errors caused by my condition.

This evaluation documents clinically significant impairments in:

- Working memory
- Reading fluency
- Phonics
- Reading Comprehension
- Attention regulation
- Executive functioning

These directly interfere with my ability to process, organize, and respond to legal materials---especially as a self-represented litigant.

---

**Requested Accommodations**

**1. Extended Time**

- 50% additional time for filings and responses
- Advance clear written notice of deadlines
- Additional time for review and comprehension

**2. Assistive Technology**

- Permission to use screen readers, dictation tools, and grammar-checking software
- Authorization to audio record proceedings for private review
- Use of organizational apps to manage deadlines and workflow

**3. Citation & Formatting Leniency**

- Flexibility on technical or citation errors related to cognitive limitations
- Opportunity to correct mistakes without sanctions
- Permission to submit filings in a simplified format

### 4. Plain-Language Communication

- Written instructions in clear, bullet-pointed format
- Simplified procedural summaries upon request
- Clarification of legal terms when needed

### 5. Procedural Navigation Support

- Designation of an ADA liaison or coordinator
- Step-by-step filing guidance when needed
- No adverse inference for requesting clarification

### 6. Cognitive Load Management

- 5-minute breaks every 45 minutes in hearings/depositions, with total time not to exceed limits set by court rules (e.g., 7 hours under Iowa Rule of Civil Procedure 1.701(5)). In my case, I was deposed for nearly 9 hours with only two 10-minute breaks and one 20-minute lunch. When another defense attorney objected to how long we were going, Plaintiff's counsel stated, "this is my deposition and I can do whatever I want," further demonstrating disregard for any considerations, let alone ADA considerations.
- Morning scheduling preferred (peak mental clarity)
- Permission to reference written notes during oral arguments
- Access to assistive technology during court proceedings
- Freedom to stand or move quietly during proceedings or while presenting (even if a mobile mic is needed)
- No penalty for requesting repetition or clarification

### 7. Use of AI-Based Assistive Tools

As part of my accommodations, I respectfully request continued permission to use assistive technologies that include screen readers, dictation software, and AI-based writing assistants (e.g., ChatGPT, Ghotit) to help with grammar, formatting, and comprehension support. These tools are not used to create legal strategy or argument, but rather to overcome cognitive barriers caused by my diagnosed disabilities.

I have difficulty processing legal formatting rules, citation conventions, and dense reading materials due to impairments in comprehension, executive functioning, working memory and reading fluency. AI-based tools have allowed me to organize thoughts, helped clarify confusing language, and helped format filings more effectively.

The sanctions previously imposed against me appear to stem, in part, from my attempt to comply with the Court's rules using these tools, while the same or similar formats were accepted from represented parties. I was not trying to deceive the Court --- I was trying to survive a system I was never trained to navigate, using every tool legally and ethically available to me.

This request aligns with the federal accessibility priorities outlined in Executive Order 14035, which mandates that public institutions---including courts---proactively support access for neurodivergent individuals, with non-apparent disabilities such as ADHD and dyslexia. That Executive Order explicitly includes neurodiversity in its accessibility framework and supports the use of assistive technology to ensure equitable participation.

Punishing me for using tools that make the legal process accessible to my disabled mind runs counter to that national policy, and to the ADA's purpose of providing meaningful access to justice.

These tools function as accessibility aids, just as a wheelchair ramp allows physical access, and are a reasonable accommodation under the ADA and Section 504 of the Rehabilitation Act, and denying their use would be functionally equivalent to denying a mobility-impaired litigant the use of a ramp or elevator.

## ADA Coordinator Questions

### How do you deal with similar situations in life?

In everyday life, I rely on support---asking questions, following others' lead, and trial and error. But litigation is vastly more complex. Outside court, I can reread and rework at my own pace. Here, I'm under high pressure, with strict deadlines and legal jargon I've never encountered before.

This process has overwhelmed me and exposed deficits I didn't know I had. When I asked for help or clarification, I was laughed at. I didn't choose to be here---false claims by the plaintiff (proven in April 22nd hearing) has forced me here. Every coping mechanism that I have ever learned in the past has only gotten me bullied and belittled by the court and the plaintiff's attorneys. The court process has made me feel punished simply for having a disability. The way I have been treated has left me feeling humiliated, dismissed, and hopeless---not because of misconduct, but because of a cognitive condition I cannot change.

### What would enable you to effectively participate?

I need time, clarity, structure, and access to tools that help me manage and comprehend legal content. With accommodations like deadline extensions, plain-language instructions, and assistive technology, I can meaningfully engage. Without them, I am expected to perform like a trained attorney---despite cognitive conditions that make that impossible.

I was sanctioned for formatting errors while copying what the Plaintiff's attorneys did---thinking I was complying with the court's order. I tried to follow the rules. I asked for clarification. I was treated like I was playing games. I was not. I was struggling---openly, honestly, and in good faith. I need someone that can explain things in simple terms.

I'm not trying to delay or avoid responsibility. I'm simply trying to be heard. Every time I've asked for help or tried to cope, using tools I've learned; I've been belittled or punished. I just want to stand before the court with dignity, have my arguments heard, and not be treated as dishonest, stupid, or incompetent because of my disability.

These accommodations are reasonable under federal law and are necessary to prevent further discrimination and denial of meaningful access.

Respectfully submitted,
/s/ Kevin M. York
August 4, 2025

| | |
|---|---|
| **Subject:** | Response - ADA accommodation - SX LACV030754 |
| **Date:** | Wednesday, September 10, 2025 at 9:50:48 AM Central Daylight Time |
| **From:** | Peggy Frericks [JB] <Peggy.Frericks@iowacourts.gov> |
| **To:** | Kevin York <kevin.york@ozonesolutions.com> |
| **Attachments:** | York Accommodation Request Form (9-7-22) (2).pdf, SX.LACV030754.ADAResponse.YORK.pdf |

> **CAUTION:** This email originated from outside of Ozone. Do not click links or open attachments unless you recognize the sender and know the content is safe. If this email is spam, send this email as an attachment or screenshot to NESAsupport@teamlogicit.com.

Dear Mr. York,

Please see the attached response to your ADA request in Sioux County case LACV030754.

Sincerely,

**Peggy Frericks** | District Court Administrator - District 3
Woodbury County Courthouse - Room 210
620 Douglas St. I Sioux City | Iowa 51101
712.279-6035 ext.39747 | 712-279-6631 (fax)
Peggy.Frericks@iowacourts.gov
www.iowacourts.gov
The Iowa Judicial Branch dedicates itself to providing independent and accessible forums for the fair and prompt resolution of disputes, administering justice under law equally to all persons.

**From:** Kevin York <kevin.york@ozonesolutions.com>
**Sent:** Tuesday, August 5, 2025 1:58 AM
**To:** Peggy Frericks [JB] <Peggy.Frericks@iowacourts.gov>
**Subject:** [EXTERNAL]Re: ADA accommodation - SX LACV030754

Dear Peggy Frericks,

Thank you for your time on the phone and for your guidance regarding the accommodation request process.
Please find attached my completed **ADA Accommodation Request Form**, including my detailed response under question 9 and the supplemental "Other" attachment as you directed. I have also included responses to your additional questions below, as requested:

How do you deal with similar situations in life?

In daily life, I rely on tools like repetition, technology, trial and error, and asking others for guidance. I've never encountered a system as complex or intimidating as the court process, where there's little room for error and very little plain-language guidance. Without help, I easily become overwhelmed and confused, which makes it difficult to respond in a timely or organized way.

What would enable you to effectively participate?

Clear, simplified written instructions, additional time, and the ability to use assistive tools (like dictation software, grammar tools, or AI writing support) would help me stay organized, understand what's expected, and meet court requirements. These accommodations would allow me to participate meaningfully despite my disabilities.

Because this submission contains **sensitive medical information**, I respectfully request that it be:

1. **Kept confidential and used solely for ADA review**, and
2. **Not shared with the Plaintiff or his attorneys**, nor published to the public docket.

If any portion of this material needs to be formally filed in court, I would appreciate your guidance on how to do so under seal to protect my privacy. This request is made in good faith and based on documented disabilities that significantly impact my ability to navigate this litigation.

Please confirm receipt when you are able. I appreciate your consideration and your help in making this process more accessible.

Respectfully,

**Kevin M. York**

**From:** Peggy Frericks [JB] <Peggy.Frericks@iowacourts.gov>
**Date:** Monday, August 4, 2025 at 11:27 AM
**To:** Kevin York <kevin.york@ozonesolutions.com>
**Subject:** ADA accommodation - SX LACV030754

> **CAUTION:** This email originated from outside of Ozone. Do not click links or open attachments unless you recognize the sender and know the content is safe. If this email is spam, send this email as an attachment or screenshot to NESAsupport@teamlogicit.com.

Dear Kevin York,

Following up on our phone conversation today, I have attached the form to fill out and return concerning your request for an accommodation. What you described to me should be explained in question 9 under "other" and add any other information you would like.

In addition please include answers to the following questions:
> How do you deal with other similar situations in your life?
> What would enable you to effectively participate?

Another resource to utilize is our judicial website. www.iowacourts.gov  There is a lot of

information that might assist you in understanding the court process.

I will review your request and respond as soon as I can.


Sincerely,


**Peggy Frericks** | District Court Administrator - District 3
Woodbury County Courthouse - Room 210
620 Douglas St. I Sioux City | Iowa 51101
712.279-6035 ext.39747 | 712-279-6631 (fax)
Peggy.Frericks@iowacourts.gov
www.iowacourts.gov
The Iowa Judicial Branch dedicates itself to providing independent and accessible forums for the fair and prompt resolution of disputes, administering justice under law equally to all persons.

## ADA Coordinators' Accommodation Information Form*

### A. Basic information about the request for an ADA accommodation

| 1. | Name of person making the request: | Kevin M. York |
|---|---|---|
| 2. | Date request submitted: | 8/4/25 |
| 3. | Request submitted by (phone? form?): | Form//email |
| 4. | Case number: | LACV030754 |
| 5. | County: | Sioux |
| 6. | District: | D3 |
| 8. | Accommodation requested: | Multiple. See attached. |
| 9.* | Accommodation provided: | Denied in part and submitted to presiding judge for consideration on other courtroom requests |
| 10. | Date of 1st proceeding w/ accommodation: | 10/2025 |
| 11. | Date of 2nd proceeding w/ accommodation: | |
| 12. | Date of 3rd proceeding w/ accommodation: | |

### *B. If the accommodation provided is different than the one requested:

| 1. | Reasons for not providing requested accommodation: | See attached |
|---|---|---|
| 2. | Alternatives proposed by ADA Coordinator: | See attached response |
| 3. | Response / objections to the proposed alternative(s): | |
| 4. | Feedback from the person requesting the accommodation after the proceeding(s): | |

### C. Role of judicial officer in determining the nature of the accommodation (describe, if applicable):

Case is assigned to Business Court

### Name of ADA Coordinator:

Peggy Frericks

### Date(s) form completed:

9/10/25

*The ADA Coordinator will complete this form for each request for an accommodation. The form shall be kept in a secure folder on the district's network. It shall not be included in the case file.

Requests:

1. Extended Time
• 50% additional time for filings and responses An ADA coordinator cannot waive, alter, or grant exceptions to court rules. The nature of this request is such that it exceeds the authority of an ADA coordinator to address and will be referred to the presiding judge to consider.
• Advance clear written notice of deadlines This request is too vague and speculative to be actionable by the ADA coordinator. Some deadlines may be specified by court order. Other deadlines are established by statute or court rules. The ADA coordinator cannot speculate as to what deadlines might be included in court orders throughout the progression of the case and the ADA coordinator cannot assist with providing notice of deadlines established by statute or rule, as doing so would cross into the realm of providing legal advice. Though a person may choose to proceed as a self-represented litigant, if a person cannot interpret or understand deadlines established by court order, statute, or court rule, the appropriate course of action is to seek legal advice and representation from a person who is licensed to practice law in Iowa.
• Additional time for review and comprehension This request is too vague to be actionable by the ADA coordinator. The request does not specify if it refers to additional time during in-court proceedings or instead additional time to review motions, orders, proposed exhibits, or a variety of case filings that might be made, but even if the request were to be clarified, the ADA coordinator cannot waive, alter, or grant exceptions to court rules. If you have specific requests related to motions, orders, proposed exhibits, other filings, or in-court proceedings, the specific request should be submitted to the presiding judge.

2. Assistive Technology
• Permission to use screen readers, dictation tools, and grammar-checking software If this request relates to what you wish to use on your own time to understand and prepare for a case, the request is well-beyond the scope of what an ADA coordinator can address. If this request relates to a desire to use screen readers, dictation tools, or grammar checking software **during a hearing or trial,** a specific request could be made to the presiding judge at the time that you desire to use screen readers, dictation tools, or grammar checking software during a hearing or trial.
• Authorization to audio record proceedings for private review In an evidentiary hearing or trial, District Court Administration arranges for a court reporter to be present to make a record of the case. Generally speaking, video or audio recording of a court proceeding by litigants or observers is not allowed, however, this request will be forwarded to the presiding judge to consider, as the control of the courtroom and the conduct of a proceeding rests with the presiding judge.
• Use of organizational apps to manage deadlines and workflow If this request relates to what you wish to use on your own time to understand and prepare for a case, the request is well-beyond the scope of what an ADA coordinator can address.

3. Citation & Formatting Leniency
• Flexibility on technical or citation errors related to cognitive limitations The ADA does not require a covered entity to grant an accommodation that would fundamentally alter the nature of a service. Granting one party generalized "flexibility" relating to technical or citation errors related to cognitive limitations would not only exceed the authority of the ADA coordinator, but it would also fundamentally alter the nature of the services of the court. As such, this request is denied. Though a person may choose to proceed as a self-represented litigant, if a person feels they are likely to make technical or citation errors, the person should seek legal advice and representation from a person licensed to practice law in Iowa.

2 of 5

• Opportunity to correct mistakes without sanctions The ADA does not require a covered entity to grant an accommodation that would fundamentally alter the nature of a service. Granting one party blanket authority to "correct mistakes without sanctions" would not only exceed the authority of the ADA coordinator, but it would also fundamentally alter the nature of the services of the court. As such, this request is denied. Though a person may choose to proceed as a self-represented litigant, if a person feels they are likely to make mistakes that require correction, the person should seek legal advice and representation from a person licensed to practice law in Iowa.
• Permission to submit filings in a simplified format The ADA does not require a covered entity to grant an accommodation that would fundamentally alter the nature of a service. Granting one party blanket authority to "submit filings in a simplified format" would not only exceed the authority of the ADA coordinator, but it would also fundamentally alter the nature of the services of the court. As such, this request is denied. Though a person may choose to proceed as a self-represented litigant, if a person feels they do not have the capability to comply with court rules regarding filings, the person should seek legal advice and representation from a person licensed to practice law in Iowa.


4. Plain-Language Communication
• Written instructions in clear, bullet-pointed format This request would involve provision of legal advice. The ADA coordinator and other judicial branch staff are not authorized or qualified to provide legal advice to litigants. The ADA does not require a covered entity to grant an accommodation that would fundamentally alter the nature of a service. In addition to judicial branch staff lacking authority and qualifications to provide legal advice to litigants, doing so would also represent a fundamental alteration of the service the judicial branch provides. This request is denied.
• Simplified procedural summaries upon request. This request would involve provision of legal advice. The ADA coordinator and other judicial branch staff are not authorized or qualified to provide legal advice to litigants. The ADA does not require a covered entity to grant an accommodation that would fundamentally alter the nature of a service. In addition to judicial branch staff lacking authority and qualifications to provide legal advice to litigants, doing so would also represent a fundamental alteration of the service the judicial branch provides. This request is denied.
• Clarification of legal terms when needed  This request would involve provision of legal advice. The ADA coordinator and other judicial branch staff are not authorized or qualified to provide legal advice to litigants. The ADA does not require a covered entity to grant an accommodation that would fundamentally alter the nature of a service. In addition to judicial branch staff lacking authority and qualifications to provide legal advice to litigants, doing so would also represent a fundamental alteration of the service the judicial branch provides. This request is denied.


5. Procedural Navigation Support
• Designation of an ADA liaison or coordinator. I serve as ADA coordinator for the Third Judicial District. If you are requesting designation of another person to serve as your own personal specially assigned ADA liaison or coordinator, this request is denied.
• Step-by-step filing guidance when needed. It appears as if you have been successful in filing numerous motions within this case. As such, it is not clear what assistance you need. However, if you need assistance with filing, please contact the Clerk of Court.

• No adverse inference for requesting clarification. This request is too vague and speculative to be actionable.

6. Cognitive Load Management
• 5-minute breaks every 45 minutes in hearings/depositions, with total time not to exceed limits set by court
rules (e.g., 7 hours under Iowa Rule of Civil Procedure 1.701(5)). In my case, I was deposed for nearly 9 hours
with only two 10-minute breaks and one 20-minute lunch. When another defense attorney objected to how
long we were going, Plaintiff's counsel stated, "this is my deposition and I can do whatever I want," further
demonstrating disregard for any considerations, let alone ADA considerations. Control of the courtroom and the conduct of a proceeding rests with the presiding judge. This request will be shared with the presiding judge to consider.
• Morning scheduling preferred (peak mental clarity) Control of the courtroom and the conduct of a proceeding rests with the presiding judge. This request will be shared with the presiding judge to consider.
• Permission to reference written notes during oral arguments Control of the courtroom and the conduct of a proceeding rests with the presiding judge. This request will be shared with the presiding judge to consider.
• Access to assistive technology during court proceedings This request is too vague to be actionable. If you wish to resubmit a request that is more specific, it will be considered.
• Freedom to stand or move quietly during proceedings or while presenting (even if a mobile mic is needed) Control of the courtroom and the conduct of a proceeding rests with the presiding judge.
• No penalty for requesting repetition or clarification. Control of the courtroom and the conduct of a proceeding rests with the presiding judge. This request will be shared with the presiding judge to consider.

7. Use of AI-Based Assistive Tools
As part of my accommodations, I respectfully request continued permission to use assistive technologies that include
screen readers, dictation software, and AI-based writing assistants (e.g., ChatGPT, Ghotit) to help with grammar,
formatting, and comprehension support. These tools are not used to create legal strategy or argument, but rather to
overcome cognitive barriers caused by my diagnosed disabilities. If this request relates to what you wish to use on your own time to understand and prepare for a case, the request is well-beyond the scope of what an ADA coordinator can address. Though a person may choose to proceed as a self-represented litigant, if a person is incapable of using proper grammar or formatting rules, or incapable of comprehending elements of the case, the person should seek advice and representation from a person who is licensed to practice law in Iowa.

I have difficulty processing legal formatting rules, citation conventions, and dense reading materials due to impairments in
comprehension, executive functioning, working memory and reading fluency. AI-based tools have allowed me to organize

thoughts, helped clarify confusing language, and helped format filings more effectively. If this request relates to what you wish to use on your own time to understand and prepare for a case, the request is well-beyond the scope of what an ADA coordinator can address. Though a person may choose to proceed as a self-represented litigant, if a person is incapable of self-representation, the person should seek advice and representation from a person who is licensed to practice law in Iowa.

| | |
|---|---|
| **Subject:** | Reply - SX-CVCV031548-ADA accommodation |
| **Date:** | Thursday, September 4, 2025 at 2:55:51 PM Central Daylight Time |
| **From:** | Peggy Frericks [JB] <Peggy.Frericks@iowacourts.gov> |
| **To:** | Kevin York <kevin.york@ozonesolutions.com> |
| **Attachments:** | OROT_CVCV03154828805300080766103194.pdf |

> **CAUTION:** This email originated from outside of Ozone. Do not click links or open attachments unless you recognize the sender and know the content is safe. If this email is spam, send this email as an attachment or screenshot to NESAsupport@teamlogicit.com.

Dear Mr. York,

Your renewed ADA request has been reviewed, see responses below.

- Full access to case records and filings; The case is a public case. Mr. York or any other person who is interested in the case may view records of case filings at the public terminal in the courthouse or request copies of records from the Clerk of Court.
- Clear written explanation of the court's expectations and any obligations placed on me; Court staff are not qualified or authorized to provide legal advice to corporate defendants or to individuals who are interested in litigation involving a corporation. Iowa Secretary of State Business Entity records indicate that Mr. Kevin York is alternatively listed as President or CEO and Registered Agent for Ozone Solutions Inc. Any questions Mr. York has about the case against the Ozone Solutions, Inc. should be referred to corporate counsel.
- Permission to use assistive technology and AI tools to help interpret and file legal content; Mr. York is not a party to the case. Questions about use of assistive technology and AI tools should be referred to corporate counsel.
- Confirmation and understanding of whether I am considered a party to the case and in what capacity; Mr. York, as President or CEO and Registered Agent for Ozone Solutions Inc, should consult with corporate counsel.
- Any accommodations that would ensure equal participation as required by the ADA. Mr. York is not a party to the case. As such, it is not clear what sort of participation is contemplated. Mr. York should consult with corporate counsel.
- Explanation of why I am being fined 500 a day, and I am denied access to court on this case. On August 25, 2025, the court issued an order finding defendant in contempt of court and issuing per diem sanction for non-compliance. The defendant is Ozone Solutions, Inc. Mr. York, as President or CEO and Registered Agent for Ozone Solutions, Inc. should consult with corporate counsel for Ozone Solutions, Inc.
- Proper notice on hearings. When corporate counsel files an appearance for Ozone Solutions, Inc, counsel will be indexed to the case and will receive case related notifications. If Mr. York wishes to know about hearings, he can contact the Clerk of Court to obtain records from the case, which would include records of scheduled hearings.

Regards,

**Peggy Frericks** | District Court Administrator - District 3
Woodbury County Courthouse - Room 210
620 Douglas St. I Sioux City | Iowa 51101
712.279-6035 ext.39747 | 712-279-6631 (fax)
Peggy.Frericks@iowacourts.gov
www.iowacourts.gov
The Iowa Judicial Branch dedicates itself to providing independent and accessible forums for the fair and prompt resolution of disputes, administering justice under law equally to all persons.


**From:** Kevin York <kevin.york@ozonesolutions.com>
**Sent:** Monday, August 25, 2025 1:05 PM
**To:** Peggy Frericks [JB] <Peggy.Frericks@iowacourts.gov>
**Subject:** [EXTERNAL]Re: Reply - SX-CVCV031548-ADA accommodation

Dear Peggy,

I am writing to formally request ADA accommodations in connection with the case referenced above. I am extremely concerned by the conflicting treatment I have received from the court and clerks.
On one hand, I am told I am not a party to the action and therefore cannot access the case or participate. On the other hand, I am being contacted and asked to appear or explain my absence—despite being denied the information or access necessary to do so. This is not only confusing, it is fundamentally unfair.

I am actively trying to understand the nature of the case, the proceedings, and my role. However, I have been denied access to court filings, dockets, and related materials. As someone with a recognized cognitive disability, these barriers are even more difficult to navigate without the accommodations to which I am legally entitled under the Americans with Disabilities Act.
I respectfully demand immediate clarification of my standing in this matter, and I renew my request for accommodations, including but not limited to:

- Full access to case records and filings;
- Clear written explanation of the court's expectations and any obligations placed on me;
- Permission to use assistive technology and AI tools to help interpret and file legal content;
- Confirmation and understanding of whether I am considered a party to the case and in what capacity;
- Any accommodations that would ensure equal participation as required by the ADA.
- Explanation of why I am being fined 500 a day, and I am denied access to court on this case
- Proper notice on hearings.

Please confirm receipt of this message and advise how I may formally file or update my accommodation request. If this matter is not resolved quickly, I will be forced to escalate my concerns through formal ADA complaint channels and file for judicial review if necessary.

Sincerely,

**Kevin M. York**

830-643-4345

**From:** Peggy Frericks [JB] <Peggy.Frericks@iowacourts.gov>
**Date:** Monday, August 11, 2025 at 9:26 AM
**To:** Kevin York <kevin.york@ozonesolutions.com>
**Subject:** Reply - SX-CVCV031548-ADA accommodation

> CAUTION: This email originated from outside of Ozone. Do not click links or open attachments unless you recognize the sender and know the content is safe. If this email is spam, send this email as an attachment or screenshot to NESAsupport@teamlogicit.com.

Dear Kevin York,

Your ADA request for Sioux County-CVCV031548 has been reviewed. Since you are not a party in the case the accommodation is denied.

The 2nd ADA request is still under review for Sioux County Case-LACV030754.

Regards,

**Peggy Frericks** | District Court Administrator - District 3
Woodbury County Courthouse - Room 210
620 Douglas St. I Sioux City | Iowa 51101
712.279-6035 ext.39747 | 712-279-6631 (fax)
Peggy.Frericks@iowacourts.gov
www.iowacourts.gov
The Iowa Judicial Branch dedicates itself to providing independent and accessible forums for the fair and prompt resolution of disputes, administering justice under law equally to all persons.

**From:** Kevin York <kevin.york@ozonesolutions.com>
**Sent:** Tuesday, August 5, 2025 3:13 PM
**To:** Peggy Frericks [JB] <Peggy.Frericks@iowacourts.gov>
**Subject:** [EXTERNAL]CVCV031548 ADA accommodation - SX

You don't often get email from kevin.york@ozonesolutions.com. Learn why this is important

Dear Peggy Frericks,

I received notice of a court case today and was informed that I would be arrested if I did not appear. However, I am confused, as I am not personally listed as a named party in the case. I truly do not understand what is happening procedurally.

3 of 5

From my understanding, individuals are not permitted to represent LLCs or corporations without an attorney ---yet I am now being threatened with arrest for allegedly failing to appear on behalf of a company I do not legally own. This contradiction has left me deeply confused, anxious, and unsure of what I am allowed or expected to do.

If I am required to take any additional steps --- or if there is a different process I should follow -- I would greatly appreciate your clarification.

Attached, please find my completed **ADA Accommodation Request Form**, including my detailed response to question 9 and the "Other" attachment, as requested.

Because this submission contains sensitive medical information, I respectfully request that it be:

1. Kept confidential and used solely for ADA review purposes; and
2. Not shared with the Plaintiff or their attorneys, nor filed publicly on the court docket.

If any portion of this information must be formally filed with the court, I would appreciate your direction on how to do so **under seal** in order to protect my privacy. This request is made in good faith and is based on documented cognitive disabilities that significantly affect my ability to navigate the legal process.

Please confirm receipt when convenient. I sincerely appreciate your time, your assistance, and your role in helping make the court process more accessible.

Respectfully,
Kevin M. York

**From:** Peggy Frericks [JB] <Peggy.Frericks@iowacourts.gov>
**Date:** Monday, August 4, 2025 at 11:27 AM
**To:** Kevin York <kevin.york@ozonesolutions.com>
**Subject:** ADA accommodation - SX LACV030754

> **CAUTION:** This email originated from outside of Ozone. Do not click links or open attachments unless you recognize the sender and know the content is safe. If this email is spam, send this email as an attachment or screenshot to NESAsupport@teamlogicit.com.

Dear Kevin York,

Following up on our phone conversation today, I have attached the form to fill out and return concerning your request for an accommodation. What you described to me should be explained in question 9 under "other" and add any other information you would like.

In addition please include answers to the following questions:

How do you deal with other similar situations in your life?
What would enable you to effectively participate?

Another resource to utilize is our judicial website.  www.iowacourts.gov    There is a lot of information that might assist you in understanding the court process.

I will review your request and respond as soon as I can.


Sincerely,


**Peggy Frericks** | District Court Administrator - District 3
Woodbury County Courthouse - Room 210
620 Douglas St. I Sioux City | Iowa 51101
712.279-6035 ext.39747 | 712-279-6631 (fax)
Peggy.Frericks@iowacourts.gov
www.iowacourts.gov
The Iowa Judicial Branch dedicates itself to providing independent and accessible forums for the fair and prompt resolution of disputes, administering justice under law equally to all persons.

**Subject:** Re: Reply - SX-CVCV031548-ADA accommodation
**Date:** Monday, August 25, 2025 at 1:05:06 PM Central Daylight Time
**From:** Kevin York <kevin.york@ozonesolutions.com>
**To:** Peggy Frericks [JB] <Peggy.Frericks@iowacourts.gov>
**Attachments:** OROT_CVCV031548288053000800766103194.pdf

Dear Peggy,

I am writing to formally request ADA accommodations in connection with the case referenced above. I am extremely concerned by the conflicting treatment I have received from the court and clerks.
On one hand, I am told I am not a party to the action and therefore cannot access the case or participate. On the other hand, I am being contacted and asked to appear or explain my absence—despite being denied the information or access necessary to do so. This is not only confusing, it is fundamentally unfair.

I am actively trying to understand the nature of the case, the proceedings, and my role. However, I have been denied access to court filings, dockets, and related materials. As someone with a recognized cognitive disability, these barriers are even more difficult to navigate without the accommodations to which I am legally entitled under the Americans with Disabilities Act.
I respectfully demand immediate clarification of my standing in this matter, and I renew my request for accommodations, including but not limited to:

- Full access to case records and filings;
- Clear written explanation of the court's expectations and any obligations placed on me;
- Permission to use assistive technology and AI tools to help interpret and file legal content;
- Confirmation and understanding of whether I am considered a party to the case and in what capacity;
- Any accommodations that would ensure equal participation as required by the ADA.
- Explanation of why I am being fined 500 a day, and I am denied access to court on this case
- Proper notice on hearings.

Please confirm receipt of this message and advise how I may formally file or update my accommodation request. If this matter is not resolved quickly, I will be forced to escalate my concerns through formal ADA complaint channels and file for judicial review if necessary.

Sincerely,

**Kevin M. York**

830-643-4345

**From:** Peggy Frericks [JB] <Peggy.Frericks@iowacourts.gov>
**Date:** Monday, August 11, 2025 at 9:26 AM

**To:** Kevin York <kevin.york@ozonesolutions.com>
**Subject:** Reply - SX-CVCV031548-ADA accommodation

CAUTION: This email originated from outside of Ozone. Do not click links or open attachments unless you recognize the sender and know the content is safe. If this email is spam, send this email as an attachment or screenshot to NESAsupport@teamlogicit.com.

Dear Kevin York,

Your ADA request for Sioux County-CVCV031548 has been reviewed. Since you are not a party in the case the accommodation is denied.

The 2nd ADA request is still under review for Sioux County Case-LACV030754.

Regards,

**Peggy Frericks** | District Court Administrator - District 3
Woodbury County Courthouse - Room 210
620 Douglas St. I Sioux City | Iowa 51101
712.279-6035 ext.39747 | 712-279-6631 (fax)
Peggy.Frericks@iowacourts.gov
www.iowacourts.gov
The Iowa Judicial Branch dedicates itself to providing independent and accessible forums for the fair and prompt resolution of disputes, administering justice under law equally to all persons.

**From:** Kevin York <kevin.york@ozonesolutions.com>
**Sent:** Tuesday, August 5, 2025 3:13 PM
**To:** Peggy Frericks [JB] <Peggy.Frericks@iowacourts.gov>
**Subject:** [EXTERNAL]CVCV031548 ADA accommodation - SX

You don't often get email from kevin.york@ozonesolutions.com. Learn why this is important

Dear Peggy Frericks,

I received notice of a court case today and was informed that I would be arrested if I did not appear. However, I am confused, as I am not personally listed as a named party in the case. I truly do not understand what is happening procedurally.

From my understanding, individuals are not permitted to represent LLCs or corporations without an attorney ---yet I am now being threatened with arrest for allegedly failing to appear on behalf of a company I do not legally own. This contradiction has left me deeply confused, anxious, and unsure of what I am allowed or expected to do.

If I am required to take any additional steps --- or if there is a different process I should

follow -- I would greatly appreciate your clarification.

Attached, please find my completed **ADA Accommodation Request Form**, including my detailed response to question 9 and the "Other" attachment, as requested.

Because this submission contains sensitive medical information, I respectfully request that it be:

1. Kept confidential and used solely for ADA review purposes; and
2. Not shared with the Plaintiff or their attorneys, nor filed publicly on the court docket.

If any portion of this information must be formally filed with the court, I would appreciate your direction on how to do so **under seal** in order to protect my privacy. This request is made in good faith and is based on documented cognitive disabilities that significantly affect my ability to navigate the legal process.

Please confirm receipt when convenient. I sincerely appreciate your time, your assistance, and your role in helping make the court process more accessible.

Respectfully,
Kevin M. York


**From:** Peggy Frericks [JB] <Peggy.Frericks@iowacourts.gov>
**Date:** Monday, August 4, 2025 at 11:27 AM
**To:** Kevin York <kevin.york@ozonesolutions.com>
**Subject:** ADA accommodation - SX LACV030754

---

**CAUTION:** This email originated from outside of Ozone. Do not click links or open attachments unless you recognize the sender and know the content is safe. If this email is spam, send this email as an attachment or screenshot to NESAsupport@teamlogicit.com.

---

Dear Kevin York,

Following up on our phone conversation today, I have attached the form to fill out and return concerning your request for an accommodation. What you described to me should be explained in question 9 under "other" and add any other information you would like.

In addition please include answers to the following questions:
 How do you deal with other similar situations in your life?
  What would enable you to effectively participate?

Another resource to utilize is our judicial website. www.iowacourts.gov   There is a lot of information that might assist you in understanding the court process.

I will review your request and respond as soon as I can.


Sincerely,


**Peggy Frericks** | District Court Administrator - District 3
Woodbury County Courthouse - Room 210
620 Douglas St. I Sioux City | Iowa 51101
712.279-6035 ext.39747 | 712-279-6631 (fax)
Peggy.Frericks@iowacourts.gov
www.iowacourts.gov
The Iowa Judicial Branch dedicates itself to providing independent and accessible forums for the fair and prompt resolution of disputes, administering justice under law equally to all persons.

**From:** Peggy Frericks [JB] <Peggy.Frericks@iowacourts.gov>
**Date:** Monday, August 4, 2025 at 11:27 AM
**To:** Kevin York <kevin.york@ozonesolutions.com>
**Subject:** ADA accommodation - SX LACV030754

CAUTION: This email originated from outside of Ozone. Do not click links or open attachments unless you recognize the sender and know the content is safe. If this email is spam, send this email as an attachment or screenshot to NESAsupport@teamlogicit.com.

Dear Kevin York,

Following up on our phone conversation today, I have attached the form to fill out and return concerning your request for an accommodation. What you described to me should be explained in question 9 under "other" and add any other information you would like.

In addition please include answers to the following questions:
How do you deal with other similar situations in your life?
What would enable you to effectively participate?

Another resource to utilize is our judicial website.  www.iowacourts.gov   There is a lot of information that might assist you in understanding the court process.

I will review your request and respond as soon as I can.


Sincerely,


**Peggy Frericks** | District Court Administrator - District 3
Woodbury County Courthouse - Room 210
620 Douglas St. I Sioux City | Iowa 51101
712.279-6035 ext.39747 | 712-279-6631 (fax)
Peggy.Frericks@iowacourts.gov
www.iowacourts.gov
The Iowa Judicial Branch dedicates itself to providing independent and accessible forums for the fair and prompt resolution of disputes, administering justice under law equally to all persons.

Subject: Re: ADA accommodation - SX LACV030754
Date: Tuesday, August 5, 2025 at 1:57:52 AM Central Daylight Time
From: Kevin York <kevin.york@ozonesolutions.com>
To: Peggy Frericks [JB] <Peggy.Frericks@iowacourts.gov>
Attachments: York Accommodation Request Form (9-7-22) (2).pdf

Dear Peggy Frericks,

Thank you for your time on the phone and for your guidance regarding the accommodation request process.

Please find attached my completed **ADA Accommodation Request Form**, including my detailed response under question 9 and the supplemental "Other" attachment as you directed. I have also included responses to your additional questions below, as requested:

How do you deal with similar situations in life?

In daily life, I rely on tools like repetition, technology, trial and error, and asking others for guidance. I've never encountered a system as complex or intimidating as the court process, where there's little room for error and very little plain-language guidance. Without help, I easily become overwhelmed and confused, which makes it difficult to respond in a timely or organized way.

What would enable you to effectively participate?

Clear, simplified written instructions, additional time, and the ability to use assistive tools (like dictation software, grammar tools, or AI writing support) would help me stay organized, understand what's expected, and meet court requirements. These accommodations would allow me to participate meaningfully despite my disabilities.

Because this submission contains **sensitive medical information**, I respectfully request that it be:

1. **Kept confidential and used solely for ADA review**, and
2. **Not shared with the Plaintiff or his attorneys**, nor published to the public docket.

If any portion of this material needs to be formally filed in court, I would appreciate your guidance on how to do so under seal to protect my privacy. This request is made in good faith and based on documented disabilities that significantly impact my ability to navigate this litigation.

Please confirm receipt when you are able. I appreciate your consideration and your help in making this process more accessible.


Respectfully,


**Kevin M. York**

## IN THE IOWA DISTRICT COURT FOR SIOUX COUNTY

| | |
|---|---|
| SCOTT RYAN POSTMA<br><br>Petitioner,<br><br>VS<br><br>HAROLD LEROY REVOCABLE LIVING<br>VANDERVLIET<br>OZONE SOLUTIONS, INC<br>OS HOLDINGS LLC<br>K&H HOLDINGS, LLC<br>ARVIN BRENNEMAN<br>OZONE LLC<br>MIKE KATS<br>HAROLD VANDER VLIET<br>KEVIN YORK<br>OZONE SOLUTIONS RENTAL LLC<br>DIANE WEDEBRAND<br>O3 TECH LLC<br>PRESERVATION TECH LLC<br><br>Respondent. | 03841  LACV030754<br><br>**ORDER**<br><br>Granting Sanction of Attorney Fees |

On 5/14/2025 (D0340) the Court granted the Plaintiff's Motion to Strike and awarded fees based on the Defendant York's repeated citations to incorrect legal authority, otherwise called hallucinations, caused by York's use of generative AI.

Plaintiff has filed a fee affidavit. The Court finds that the fees are reasonable.

Defendant York resists based on an argument that he should not be penalized for quoting from open-source platforms. The problem is that Defendant's use of generative AI has resulted in the creation of hallucinations and incorrect legal citations. Even if the Defendant is utilizing AI tools to better understand the legal issues and conduct research, the Defendant has an obligation to confirm that citations are correct and not fabricated prior to presenting them to the Court. By presenting inaccurate legal authority, it has forced the Plaintiff to conduct additional work to determine whether the citations are accurate. To be clear, sanctions are not imposed based on stylistic preferences. The Court has awarded sanctions based on the Defendant's repeated false citations of legal authority.

Exhibit C

IT IS HEREBY ORDERED that Defendant Kevin York shall pay $2,436.00 in fees to Plaintiff Scott Postma within sixty (60) days of this order. Failure to comply may result in a finding of contempt of court.

IT IS SO ORDERED.

If you need assistance to participate in court due to a disability, call the disability coordinator at (712) 279-6035 or information at https://www.iowacourts.gov/for-the-public/ada/. Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). **Disability coordinators cannot provide legal advice.**



State of Iowa Courts

**Case Number**
LACV030754
**Type:**

**Case Title**
SCOTT POSTMA V KEVIN YORK, ET AL
OTHER ORDER

So Ordered

Sarah Crane, District Court Judge
Fifth Judicial District of Iowa

Electronically signed on 2025-07-02 17:00:52

**Subject:** Re: Information Needed

**Date:** Wednesday, December 3, 2025 at 6:09:12 PM Central Standard Time

**From:** Kevin York <kevin.york@ozonesolutions.com>

**To:** Corey Lorenzen <clorenzen@lorenzenlawfirm.com>

**CC:** lhulsebus@dickinsonbradshaw.com <lhulsebus@dickinsonbradshaw.com>, jmadden@dickinsonbradshaw.com <jmadden@dickinsonbradshaw.com>, jessica.board@heidmanlaw.com <jessica.board@heidmanlaw.com>, Matthew A. McGuire <mmcguire@nyemaster.com>, Michael W. Thrall <MWT@nyemaster.com>, David Bower <DBower@nyemaster.com>, steve@cabslaw.com <steve@cabslaw.com>, litfoundation@outlook.com <litfoundation@outlook.com>

Corey,

Thank you for your email. For clarity, I did respond the same afternoon. Your 1:02 pm text referenced the same issues raised in your email, and I replied at 2:58 pm with a full written response. Written communication is part of my ADA accommodations and ensures accuracy, so I want to make sure the record reflects that I did not ignore your communication.

I want to be clear that I am cooperating in good faith and will continue to do so. The information I provided on December 1 was complete to the best of my actual possession, custody, and knowledge. Regarding your note about Nicholas Freddie: he is no longer with the company. He assisted with limited service calls temporarily but has since left to join the military, which is why he was not included in my December 1 list. I have not seen the payroll docs you referenced, If you send them to me, I will confirm any questions you may have.

I also want to address your comment suggesting that I lack working knowledge of the companies. That is simply incorrect. The issue is not my knowledge of the business; the issue is that many of the historical documents you are requesting were taken, removed, or remain in the possession of prior counsel, the banks, Scott Postma, or other third-party custodians. I have repeatedly directed you to the parties who actually maintain the original records. My operational knowledge remains intact. The challenge lies in the disorganized or incomplete state of the legacy files that were transmitted to me, combined with the loss of documents and computers that were previously in our possession. I am providing everything that exists in my possession, and I cannot produce documents that were stolen, withheld, or never returned to the companies.

I am more than willing to provide the materials that were forwarded to me; however, they were not categorized, indexed, or organized in any usable way when Nyemaster transmitted them. I am still reviewing and sorting what exists, and I will produce anything in my possession that I can identify as responsive.

To assist further, I will upload to a SharePoint folder, attached to this email, the full set of documents that were transmitted to me by Nyemaster Goode and other custodians. They were provided in an unorganized condition, but I am happy to make them available to you exactly as I received them.

If there are any specific items from your November 24 list that you believe are (1) within my personal possession or knowledge, and (2) not already held by those custodians, please identify them item-by-item and I will address them.

Regarding communication: because of my documented ADA-related processing limitations, unstructured or unexpected calls create significant difficulty. Written communication ensures clarity, accuracy, and prevents misunderstandings. This is not a refusal to communicate; it is a necessary accommodation that allows me to participate meaningfully and respond responsibly.

I also want to address your implication that my ADA accommodations are inconsistent with managing or

Exhibit D

1 of 11

operating a company. My limitations concern processing volume, organization, and multi-category requests —not my ability to make business decisions or run day-to-day operations. Those are entirely separate functions. I respectfully request that this distinction be acknowledged going forward.

Separately, I expect to have the organized materials related to the Texas loss available next week once that lawsuit is formally filed; those records are not part of this case's historical document set, but I will make them available when they are finalized.

I will be working on-site at a job location during portions of mid-December, but I will remain reachable by email and will continue to respond in writing, when available, consistent with my ADA accommodations.

I want to be very clear that I am the only individual personally guaranteeing the notes associated with these companies. Under the Court's current rulings, I am treated as having no ownership interest, yet I remain the person with the greatest personal financial exposure. Because of that, my incentive is to ensure the companies are protected, operational, and fully compliant. Any suggestion that I lack commitment or knowledge runs directly contrary to the financial risk I personally carry.

Regards,

Kevin M. York


SharePoint files

Files (4).zip

Files (5).zip

Files subpoena.zip


---

**From:** Corey Lorenzen <clorenzen@lorenzenlawfirm.com>
**Sent:** Wednesday, December 3, 2025 2:04 PM
**To:** Kevin York <kevin.york@ozonesolutions.com>
**Cc:** lhulsebus@dickinsonbradshaw.com <lhulsebus@dickinsonbradshaw.com>; jmadden@dickinsonbradshaw.com <jmadden@dickinsonbradshaw.com>; jessica.board@heidmanlaw.com <jessica.board@heidmanlaw.com>; Matthew A. McGuire <mmcguire@nyemaster.com>; Michael W. Thrall <MWT@nyemaster.com>; David Bower <DBower@nyemaster.com>; steve@cabslaw.com <steve@cabslaw.com>
**Subject:** Re: Information Needed

CAUTION: This email originated from outside of Ozone. Do not click links or open attachments unless you recognize the sender and know the content is safe. If this email is spam, send this email as an attachment or screenshot to NESAsupport@teamlogicit.com.

Mr. York,

In my email dated November 24, 2025, I identified 35 different categories of information I am requesting. You did not comply with the deadlines I had set forth in the email. Instead, you sent an email on December 1, 2025. In that email, you identified four employees with very basic information regarding their duties. I note that there are 5 employees on your payroll. Specifically, Nicholas Freddie was part of the November 26, 2025 payroll, but was not included in your list. The rest of your email effectively said that you have no additional information but pointed me to either parties to this case, or third parties, who have the information I have requested.

I followed-up with a text message to you on December 1, 2025 at 1:02 pm that stated "[w]e need to have a call this afternoon. I am not available from 1:30-2:30, but otherwise I am available. Please let me know when you are available." I did not receive a response to that email prior to my telephone call today.

I called you and left a voicemail today. I indicated that I wanted to have a conversation with you or I would need to escalate the matter. By that I mean that I will need to seek guidance from the Court based on what has been, in my opinion, a nearly complete failure to comply with the Court's Order to cooperate with my requests for information.

You have repeatedly cited ADA-related processing limitations. To the extent that you have ADA-related processing limitations, I will accommodate those. However, I am struggling to understand how the person who has run the companies involved in this matter cannot take a phone call to discuss the issues, or provide more information than what was contained in the December 1, 2025 email. Further, you are paying yourself a 6-figure salary, but based on your December 1, 2025 email you appear to have almost no working knowledge about any of the companies.

I am happy to have a conversation with you about these matters. Otherwise, I gave you an opportunity to provide the information sought in my November 24, 2025 email. Since you have almost completely failed to provide any substantive response other than shift the burden to others, I will now be forced to address these issues with the Court.

Corey R. Lorenzen
Lorenzen Law Firm, P.C.
726 W.4th Street
Waterloo, IA 50702
319-269-7152

---

**From:** Kevin York <kevin.york@ozonesolutions.com>
**Sent:** Wednesday, December 3, 2025 1:41 PM

**To:** Corey Lorenzen <clorenzen@lorenzenlawfirm.com>
**Cc:** lhulsebus@dickinsonbradshaw.com <lhulsebus@dickinsonbradshaw.com>;
jmadden@dickinsonbradshaw.com <jmadden@dickinsonbradshaw.com>;
jessica.board@heidmanlaw.com <jessica.board@heidmanlaw.com>; Matthew A. McGuire
<mmcguire@nyemaster.com>; Michael W. Thrall <MWT@nyemaster.com>; David Bower
<DBower@nyemaster.com>; steve@cabslaw.com <steve@cabslaw.com>
**Subject:** Re: Information Needed

Corey,

Thank you for your voicemail. I need to remain in writing at this time due to ADA-related processing limitations, and because clarity and documentation are essential given the volume and history.

Just to clarify… your statement that I have not responded is not accurate. I provided a full written response to your document requests, Monday, that was requested two days before Thanksgiving, and I sent a follow-up confirming that response after your text. Those messages identify all third-party custodians who hold the historical records, and I do not have anything further beyond what was already provided.

Also, your statement about "escalating" the matter is inappropriate and unnecessary. I am in full compliance with the Court's Order, and I am responding in writing as required for ADA accommodation purposes. Written communication ensures accuracy, transparency, and accountability for both sides.

If you have specific, narrow questions arising from that written response, please email them and I will address them in writing as I am able.

Respectfully,

Kevin

Sent from my iPhone

> On Dec 1, 2025, at 2:58 PM, Kevin York <kevin.york@ozonesolutions.com> wrote:
>
>
> Corey, I sent a full response prior to this email. Please review that email first, as it addresses everything and identifies where the documents are held.
>
>
> Kevin
>
> Sent from my iPhone

On Dec 1, 2025, at 12:53 PM, Corey Lorenzen <clorenzen@lorenzenlawfirm.com> wrote:

**CAUTION:** This email originated from outside of Ozone. Do not click links or open attachments unless you recognize the sender and know the content is safe. If this email is spam, send this email as an attachment or screenshot to NESAsupport@teamlogicit.com.

Mr. York,

Other than receiving a text message indicating that heat is on in the building, I have received no response to this email. I need to schedule a call with you as soon as possible. I am available later this afternoon or any time tomorrow. Please let me know a time that works at your earliest convenience. Thank you.

Corey R. Lorenzen
Lorenzen Law Firm, P.C.
726 W.4th Street
Waterloo, IA 50702
319-269-7152

---

**From:** Corey Lorenzen <clorenzen@lorenzenlawfirm.com>
**Sent:** Monday, November 24, 2025 2:53 PM
**To:** kevin.york@ozonesolutions.com <kevin.york@ozonesolutions.com>
**Cc:** lhulsebus@dickinsonbradshaw.com <lhulsebus@dickinsonbradshaw.com>; jmadden@dickinsonbradshaw.com <jmadden@dickinsonbradshaw.com>; jessica.board@heidmanlaw.com <jessica.board@heidmanlaw.com>; Matthew A. McGuire <mmcguire@nyemaster.com>; Michael W. Thrall <mwt@nyemaster.com>; David Bower <dbower@nyemaster.com>; steve@cabslaw.com <steve@cabslaw.com>
**Subject:** Information Needed

Mr. York,

I received your text message indicating you are not currently available. In an effort to move this matter along, please provide the following information to me as soon as possible:

1. The name, address, and account number of all companies providing utilities at 451 Black Forest Road, Hull, Iowa.

The following information should be provided for all companies dating back to 2018. To the extent the company did not exist until after 2018, this request should date back to the inception of the company. For clarity, this applies to Ozone Solutions, Inc., Ozone, LLC, OS Holdings, LLC, K & H Holdings, LLC, Ozone Solutions Rental, LLC, O3 Tech, LLC, and Preservation Tech, LLC.

2. All company organizational documents, including, but not limited to, certificates of organization, articles of organization, bylaws, operating agreements, minutes, certificates, buy-sell agreements, EIN filings, and resolutions, such as banking resolutions.

3. The name, address, and telephone number of all accountants, cpa's, financial advisors, insurance agents, and attorneys who have provided services for any of these entities. With regard to attorneys, I am looking for the contact information of any attorneys who may have copies of the organizational documents contained in paragraph 2.

4. All state and federal tax returns dating back to 2018. This should include all forms, schedules (including, but not limited to, depreciation schedules), K-1's, 1099's, and any and all other supporting documentation. Please indicate if any tax returns have not been timely filed, the reason the tax return has not been filed, and the name, address and telephone number of any professional, such as a CPA, who is currently working on completing such tax return.

5. All documents related to any bank, savings, brokerage, money market, certificate of deposit, or other financial accounts. This includes, but is not limited to, monthly bank statements, canceled checks, deposit slips, wire transfer records, and tax statements. To the extent that you claim to not have such information, please explain the specific information that you do not have, the reason you do not have it, and the account information, including name, address, and telephone number of the financial institution, and account number for the account.

6. An inventory of all assets currently owned, including, but not limited to, the following (all such requests should include

information regarding where the assets are currently located, the name, address and telephone number of the custodian of the asset, and identifying information, such as the VIN number of a vehicle, or the account number of financial assets):

   a. Land, buildings, and improvements.
   b. Leasehold interests.
   c. Mineral rights, timber rights, or easements.
   d. Undeveloped lots or parcels.
   e. Vehicles
   f. Machinery
   g. Equipment
   h. Tools
   i. Furniture
   j. Office Equipment
   k. Fixtures.
   l. Fittings
   m. Inventory
   n. Stock.
   o. Supplies
   p. Art/collectibles/antiques/memorabilia
   q. Jewelry
   r. Precious Metals
   s. Valuables
   t. Firearms
   u. Sporting Goods.
   v. Agricultural Assets.
   w. Cash on Hand.
   x. Safety Deposit Boxes.
   y. Bank accounts not otherwise listed above.
   z. Investments.
  aa. Retirement accounts.
  ab. Annuities and life insurance policies.
  ac. Cryptocurrencies and digital wallets.
  ad. Accounts receivable.
  ae. Prepaid expenses.
  af. Intellectual property.
  ag. Contracts.
  ah. Customer lists.
  ai. Licenses.
  aj. Domain names/websites/social media accounts.
  ak. Royalties or licensing rights.
  al. Ownership interests in other entities.

am. Insurance policies.
an. Tax refunds or credits.
ao. Loans or notes receivable.
ap. Email accounts
aq. Cloud storage.
ar. Location of valuable digital data.
as. Interests in other rights, such as lawsuits, judgements or contingent claims.

7. An inventory of all assets listed in paragraph 6 that were owned by the entity since 2018 (or if the entity did not exist in 2018, since the inception of the entity) that are not already listed. To clarify, these are assets not listed in response to paragraph 6, but otherwise owned since 2018. If the asset is no longer owned by the entity, please provide the name, address and telephone number of the party who the asset was transferred, the reason for the transfer, and the consideration paid for the transfer of the asset.

8. A brief summary of the ownership structure of the entity, including a list of all owners since 2018, and the consideration either paid by such owner for their ownership interest, or the consideration paid to the owner for sale or transfer of their ownership interest.

9. A list of all employees of each entity, including the title of each employee, the duties of the employee, and the compensation paid to the employee. Please include the wages, salaries, commission structures, bonuses, retirement contributions, and employee benefits.

10. A current balance sheet for each entity.

11. A current profit and loss statement for each entity through at least October 31, 2025. If an entity has not filed a 2024 tax return, then an end of calendar year 2024 balance sheet and profit and loss statement for each entity.

12. A summary of the facts involving the "incident in Texas earlier this year" as referenced in your email dated November 21, 2025. Please provide the date of the incident, any property alleged to have been stolen, a description of the circumstances, the name, address and telephone number of

any person who has information related to this incident. If a police report was filed, please provide the name of the law enforcement agency in which the report was filed, along with the name of any officer investigating the incident.

13. A summary of the facts involved in the legal proceeding described in the Notice of Proceeding filed by you on November 4, 2025. Include a copy of the Summons and Complaint if available. If not, describe the factual allegations, when Ozone Solutions, Inc. was served (either confirm service on October 30, 2025 or clarify if the service date is different), whether an attorney has been retained, and whether an answer or response has been filed.

14. Current aged accounts receivable for each entity.

15. A list of all secured debt. Please identify the financial institution, the loan number, amount currently owed, any current defaults or notices of default, and collateral for such loan.

16. A list of all unsecured debt. Please identify the name, address, and telephone nubmer of the financial institution, the loan number, amount currently owed, any current defaults or notices of default.

17. Any and all tax liabilities, such as state and federal income tax, payroll taxes, sales/use tax, property taxes, and any tax liens.

18. Any trade payables, such as accounts payable. Please provide an aged accounts payment statement.

19. All executory contracts.

20. If any obligations are currently owed to employees, please provide those, includings wages/salaries/bonuses/commissions not paid, vacation or PTO not paid, retirement contributions unpaid, any arreages in employee benefits, and any workers compensation premiums or claims.

21. Real estate or equipment leases, rejection damages on

terminated leases, ongoing contract obligations not already listed/

22. Existing judgments, pending lawsuits, or contingent liabilities from lawsuits, threatened lawsuits, actions in alternative dispute resolution, or regulatory actions.

23. Customer deposits or prepayments, liabilities outstanding to customers, warranty claims, refund obligations.

24. Known or potential environmental liabilities, regulatory fines or penalties, or health & safety violations.

25. Loans to/from officers, directors, members, managers, shareholders, agents, representatives, owners, affiliates or other related entities.

26. Unpaid management fees.

27. Details of your compensation with each entity, including all amounts you have been paid in the last 24 months, and any amounts you allege you are owed.

28. Amounts alleged to be due to or from any of the entities listed above.

29. Any guarantees of third party debt

30. Pending insurance subrogation claims.

31. Product liability exposure.

32. Current or possible indemnification obligations.

33. All recurring electric, gas, water, telecom, internet and other utilities and recurring obligations. Please provide invoices with account information for each.

34. Unearned revenue from prepaid services or subscriptions.

35. Any distributions or any other amounts paid to members or shareholders (or otherwise, anyone who claims or is otherwise considered to be an owner) of entities within the

last 24 months,

In order to priortize this information, the following should be
provided to me by no later than end of business tomorrow.

- Inventory of assets.
- Current aged accounts receivable and accounts payable.
- All loan information.
- Most recent tax returns, and 2025 P & L statements and
  current balance sheets.
- Payroll and employee information.
- List of pending default notices.
- List of all pending litigation and insurance claims.
- Copies of all executory contracts, leases, and recurring and
  utility information.
- Most recent 12 months of financial account statements.
- Insurance information and any open claims.
- Any outstanding tax obligations, including filing information.

Please have the remaining information to me by no later than the
end of business on Friday, November 28, 2025.

Please feel free to contact me to discuss this demand for
information.   Thank you.


Corey R. Lorenzen
Lorenzen Law Firm, P.C.
726 W.4th Street
Waterloo, IA 50702
319-269-7152

Tuesday, December 30, 2025 at 11:23:10 PM Central Standard Time

**Subject:** Re: ADA Accommodation Request – Case No. C2021-1527A

**Date:** Wednesday, September 10, 2025 at 1:52:29 PM Central Daylight Time

**From:** Kevin York <kevin.york@ozonesolutions.com>

**To:** Steve Thomas <dcasmt@co.comal.tx.us>

Thank you
Sent from my iPhone

> On Sep 10, 2025, at 1:21 PM, Thomas,Steve <dcasmt@co.comal.tx.us> wrote:

> CAUTION: This email originated from outside of Ozone. Do not click links or open attachments unless you recognize the sender and know the content is safe. If this email is spam, send this email as an attachment or screenshot to NESAsupport@teamlogicit.com.

No, I do not handle the accommodations for filing papers or issues that the judge needs to rule on. I did talk with Judge Boyer and he does not have an issue with your requested accommodations.

Steve Thomas
District Court Administrator
Caldwell, Comal, and Hays Counties

3rd Administrative Judicial Region
Administrative Assistant

**From:** Kevin York <kevin.york@ozonesolutions.com>
**Sent:** Wednesday, September 10, 2025 12:12 PM
**To:** Thomas,Steve <dcasmt@co.comal.tx.us>
**Subject:** Re: ADA Accommodation Request – Case No. C2021-1527A

## This email originated from outside of the organization.

Do not click links or open attachments unless you recognize the sender and know the content is safe.

*- Comal IT*

So I have to file that with the court and the reason why I'm asking is is that I did that in Iowa and they told me that I did it wrong and can't file with the courthouse to go through ADA coordinators. I'm just asking for clarification because my understanding from your previous email was that you handled all this? Can you please clarify what I need to do?
Sent from my iPhone

On Sep 10, 2025, at 10:54 AM, Thomas,Steve
<dcasmt@co.comal.tx.us> wrote:

Mr. York,

The requested accommodations must be ruled on by the Court. I can not
bind the Judge with my decisions. You may take up your requests with
Judge Boyer tomorrow. But if I see him today I will advise him of your
requests.

Steve Thomas
District Court Administrator
Caldwell, Comal, and Hays Counties

3rd Administrative Judicial Region
Administrative Assistant

Tuesday, December 30, 2025 at 11:22:44 PM Central Standard Time

**Subject:** ADA Accommodation Request – Case No. C2021-1527A

**Date:** Thursday, August 21, 2025 at 11:53:18 AM Central Daylight Time

**From:** Kevin York <kevin.york@ozonesolutions.com>

**To:** DCASMT@CO.COMAL.TX.US <DCASMT@CO.COMAL.TX.US>

**CC:** adacoordinator@txcourts.gov <adacoordinator@txcourts.gov>

Dear Mr. Thomas,

I am writing to you regarding my ongoing efforts since August 14, 2025, to obtain ADA accommodations as a pro se litigant in the above-referenced matter. Despite numerous attempts— speaking with the court scheduling office, health department, and clerk's office—I have been given the runaround, with no clear direction or acknowledgment of how my request is to be handled.

As you know, under Title II of the Americans with Disabilities Act (42 U.S.C. § 12131 et seq.) and implementing regulations (28 C.F.R. § 35.107), the court system must designate at least one ADA coordinator and establish a procedure to ensure prompt and equitable resolution of accommodation requests. Yet, when I inquired, several employees indicated that the courthouse "does not provide this," that this is legal advice and they do not give out legal advice, which is both concerning and legally incorrect.

I was ultimately told that I might need to make a filing directly with the judge. While I am willing to do so, I note that in other jurisdictions the ADA coordinator—not the presiding judge—is the proper point of contact for accommodations, precisely to avoid improper judicial involvement in administrative accessibility matters.

Accordingly, I respectfully request the following:

1. Written confirmation of the appropriate ADA coordinator for Comal County District Courts;
2. Instructions on where and how I should submit my formal request for accommodations; and
3. If a specific form is required, a copy of that form or a link to access it.

For your convenience, I am attaching my written request for accommodations. If additional information is needed, I am more than willing to provide it.

This matter is time-sensitive. I am a disabled individual preparing to represent myself in litigation, and the lack of clarity or acknowledgment from the court risks depriving me of meaningful access to the judicial process as guaranteed under federal law. I trust you understand the seriousness of this situation and will respond promptly to ensure compliance with the ADA.

Please contact me directly at **830-643-4345** or by email. I look forward to your immediate guidance.

Respectfully,

**Kevin M. York**

# EXHIBIT F — CHRONOLOGY OF ADA REQUESTS, DENIALS, AND PROCEDURAL ENFORCEMENT

## Background / Pre-ADA Context

- **2018–2024**

  Plaintiff Kevin M. York serves as principal operator, guarantor, and executive decision-maker of multiple closely held business entities, including Ozone Solutions and affiliated companies. Plaintiff personally guarantees company debt and manages operations.

## ADA Notice and Request

- **August 4, 2025**

  Plaintiff **provided direct notice** to the Iowa Judicial Branch ADA Coordinator, **Peggy Frericks**, of his disabilities, including dyslexia and ADHD, and the resulting functional limitations affecting reading speed, written processing, executive functioning, and compliance with compressed deadlines.

- **August 5, 2025**

  Plaintiff **submitted a formal written ADA accommodation request**, seeking reasonable accommodations necessary for meaningful access to court proceedings, including:

  - structured written communication;
  - adequate processing time;
  - clear identification of compliance requirements; and
  - avoidance of compressed or punitive deadlines.

## Denial of ADA Accommodations

- **September 10, 2025**

  Defendant **Peggy Frericks**, acting in her official capacity, **denied Plaintiff's ADA accommodation request**.

  - The denial was issued **without an individualized assessment**.
  - No interactive process was conducted.

    ○  No alternative accommodations were proposed.

## Procedural Enforcement After ADA Denial

- **September–October 2025**

  Following the ADA denial, Defendants continued to administer Plaintiff's case using **rigid procedural rules**, including:

  - compressed compliance timelines;
  - extensive document demands;
  - procedural enforcement measures inaccessible to a disabled pro se litigant.
- **During this period**, opposing counsel (including Nyemaster Goode and Woods Fuller attorneys) submitted filings alleging Plaintiff "noncompliance" while omitting Plaintiff's documented cooperation and ADA requests.

## Sanctions and Procedural Punishment

- **April 18, 2025**

  Nyemaster Goode attorneys filed **motions and briefs** asserting Plaintiff's alleged noncompliance and seeking sanctions and enforcement remedies.

  - These filings omitted Plaintiff's cooperation and disability-related limitations.
  - Plaintiff later faced sanctions tied to these filings.
- **April 21, 2025**

  Defendants filed **exhibits, briefs, and motions** that were later relied upon by the court in imposing sanctions against Plaintiff.

  - Plaintiff subsequently received monetary sanctions based on these filings.
- **May 30, 2025**

  Plaintiff filed a **response addressing the April filings**, explaining prior cooperation and disability-related barriers to compliance.

## Administrative and Enforcement Actions by Judge Robert Tiefenthaler

- **September 2025 (Post-ADA Request)**

Defendant **Judge Robert Tiefenthaler**, acting in an administrative and non-adjudicative capacity:

- o   informed Plaintiff that he was "not part of the case"; and
- o   denied Plaintiff ADA accommodations in connection with proceedings affecting his interests.

- **Subsequent Hearing (Date Unknown)**

Despite being told he was not part of the case, Plaintiff was **summoned to a hearing without adequate notice** or clarity as to its purpose.

- **Following the Hearing**

Judge Tiefenthaler **imposed or authorized coercive monetary fines** of approximately **$500 per day** against a corporate entity controlled by Plaintiff, to continue until unspecified demands were satisfied.

- o   Plaintiff lacked ADA accommodations.
- o   Plaintiff lacked clear notice of requirements.
- o   Plaintiff lacked meaningful opportunity to be heard.

## Ongoing Harm and Continuing Violations

- **2025–Present**
  - o   Plaintiff remains subject to ongoing procedural exclusion, enforcement pressure, and financial harm.
  - o   Defendants continue to rely on narratives of "noncompliance" created after the denial of ADA accommodations.
  - o   Plaintiff faces continuing risk of additional sanctions, fines, and exclusion from proceedings without ADA-compliant access.

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

RECEIVED

JAN   8 2026

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

York, Kevin M

### DEFENDANTS

See Complaint (Multiple Defendants)

**(b)** County of Residence of First Listed Plaintiff    Comal County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Kevin M. York, Pro Se 830-643-4345
3137 S. Glenstone Ave. Box 205 Springfield, MO 65804

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 12132 (ADA Title II); 42 U.S.C. § 12203 (ADA Retaliation); 42 U.S.C. § 1983 (Due Process & Equal Protection); 18 U.S.C. §§ 1962(c), (d) (Civil RICO)

Brief description of cause:
ADA and civil rights action alleging denial of reasonable accommodations, disability retaliation, unequal enforcement, and deprivation of due process and court access, with related RICO and conspiracy claims.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE    12-31-2025

SIGNATURE OF ATTORNEY OF RECORD
Pro Se

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

Clerk of Court
United States District Court
Northern District of Texas

RECEIVED

JAN − 8 2026

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Re: Initial Filing Package

Plaintiff: Kevin M. York

Defendants: Multiple

Case No.: _____

Dear Clerk of Court,

Plaintiff Kevin M. York, proceeding pro se, respectfully submits the enclosed initial filing
package for docketing in the above-captioned matter.

This filing package includes the following documents:

1. Civil Complaint
2. Civil Cover Sheet (JS-44)
3. Motion for Temporary Restraining Order and/or Preliminary Injunction
4. Memorandum in Support of Injunctive Relief
5. Motion for Service by United States Marshals Service
6. Proposed Order(s)
7. Exhibits, including timelines, correspondence, and supporting materials
8. Service List / Defendant Information Table
9. Money Order for filing fee

All documents are submitted for filing and docketing in accordance with the Federal Rules of
Civil Procedure and the Local Rules of the Northern District of Texas.

Plaintiff does not seek ex parte merits review by submission of this cover letter. This
correspondence is provided solely for administrative clarity and to assist the Clerk's Office in
processing the filing.

Please advise if any document requires correction, refiling, or separate submission. Plaintiff
appreciates the Court's assistance and attention.

Respectfully submitted,

Kevin Michael York,   Plaintiff, Pro Se
Mailing:3731 S. Glenstone Ave., Box 205 Springfield, MO 65804
Phone: (830) 643-4345
Email: LitFoundation@outlook.com
Date:12/31/2025

CERTIFIED MAIL

PRESS FIRMLY TO SEAL

9589 0710 5270 1112 9222 94

PRIORITY® MAIL

U.S. POSTAGE PAID
PM
SPRINGFIELD, MO 65804
JAN 02, 2026

$21.60

S2224P505187-10

75242

Retail

RDC 03

FROM: TO:

Clerk of Courts
United States District Court
Northern District Court Topay
1100 Commerce Street
Dallas, TX 75242

X-RAY

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

how2recycle.info

PAPER POUCH

FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

TRACKED ■ INSURED

FROM: October 2023
11/2

JAN 8

This package is made from post-consumer waste. Please recycle - again.